TRUSTEES OF THE INTERNAL IMPROVEMENT FUND *et al.*, *Appellants,* v. CHARLES H. ROOT, *Appellee.*

1. The legislature did not lose control of the lands "irrevocably vested" in the Trustees of the Internal Improvement Fund of Florida by chapter 610, approved January 6, 1855. All the authority possessed by the legislature before the enactment of chapter 610, Laws of Florida, with reference to the lands "irrevocably vested" in the trustees by that act, was possessed by the legislature after the passage of the act, except that no vested rights could be impaired by subsequent legislation.

2. The powers and duties of the Trustees of the Internal Improvement Fund with reference to the lands "irrevocably vested" in them in trust for stated purposes, are subject to legislative control when property rights of third persons are not involved.

3. While acting within their statutory authority, the discretion of the Trustees of the Internal Improvement Fund when exercised in good faith and with due regard for the trusts committed to them, will not be controlled by the courts; but if the lands vested in the trustees for the purposes of the trusts are not necessary for the execution of the original public trusts that are actually being performed and for which performance obligations have been assumed by the trustees, the legislative direction that the lands be sold in small quantities at a greatly reduced price to actual settlers should be observed by the trustees.

4. While the courts will not force the trustees of the Internal Improvement Fund to perform a later trust to the neglect of an existing original trust actually being performed where it appears that the lands are not sufficient for both trusts, yet if it does not appear that the lands are insufficient for both trusts, the superior power of the legislature to direct the disposition of the lands must be recognized and enforced by the court.

5. It is within the power of the legislature to direct that the lands held by the Trustees of the Internal Improvement Fund be sold to actual settlers at reduced prices upon stated conditions, and such legislative direction should be observed by the trustees where private rights are not thereby violated.

This case was decided by the court En Banc.

Appealed from the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the court.

*Park Trammell,* Attorney General, for Appellants;

*Stewart & Bly,* for Appellee.

WHITFIELD, C. J.—On November 18th, 1908, the appellee brought a bill in equity in the circuit court for

Dade county against the Trustees of the Internal Improvement Fund of Florida and James Cordner, in which it is in brief alleged that the appellee Charles H. Root is over the age of thirty years and is a citizen of Dade county, Florida; that on or about June 20th, 1907, he entered upon the S. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ of Sec. 13, T. 50 S. R. 41 E., containing eighty acres, more or less, of the lands of the Internal Improvement Fund of Florida donated to the State by Act of Congress of September 28th, 1850; that he settled on said land and made improvements thereon by erecting building and cultivating more than one acre thereof; that he has since remained upon and cultivated the same; that prior to February 11th, 1908, he, desiring to purchase the land, filed with the Commissioner of Agriculture his affidavit "that he was twenty-one years of age and a citizen of this State, and that such purchase was for the purpose of actual settlement and cultivation and that he had no other homestead, and that such purchase was made for his exclusive use and benefit, and not directly or indirectly for the use or benefit of any other person," and tendered with such affidavit twenty dollars for the eighty acres; that his offer to purchase was denied in violation of the statutes of this State; that afterwards the Trustees of the Internal Improvement Fund illegally and without notice to complainant, sold the said land to James Cordner; that complainant was and is in possession of the land claiming it under the laws of Florida, and when the conveyance was made from the Trustees to Cordner, they all knew of complainant's possession and claim of the land. It is prayed that the defendants be enjoined from interfering with complainant's possession; that the deed to Cordner be cancelled and that a conveyance of the land be decreed to be made by the Trustees to com-

plainant, upon the payment of twenty-five (25c) cents per acre for the land.

This appeal is from an order overruling a demurrer to the bill of complaint.

The sections of the General Statutes upon which the complainant bases the rights asserted by him are as follows:

"624. (436). Homestead.—Any person being the head of a family or twenty-one years of age, and a citizen of the State, shall be entitled to purchase eighty acres or less quantity of any lands of the Internal Improvement Fund donated to the State by the Act of Congress of September 28th, 1850, for the price of twenty-five cents per acre, as provided in the two sections next following.

625. (437). Title, how obtained.—The person applying for the benefit of the last preceding section shall file with the Commissioner of Agriculture his affidavit that he is the head of a family, or is twenty-one years of age, and is a citizen of this State, and that such purchase is made for the purpose of actual settlement and cultivation and that he has no other homestead, and that such purchase is made for his exclusive use and benefit, and not directly or indirectly for the use or benefit of any other person; and upon filing said affidavit, and the payment of twenty-five cents per acre, he shall receive a title to said land.

626. (438.) Pre-emption right.—When any person entitled to the benefit of the two preceding sections shall have settled on any land subject to purchase under said sections, and shall have made improvements thereon by erecting a building and fencing, and cultivating not less than one acre thereof, he shall have the first right to purchase the land so settled, and any other person desiring to purchase the land so settled shall give to the

original settler six month's notice of his intention before being permitted to purchase the same."

By an Act of Congress approved September 28, 1850, the United States "to enable the State  *  *  *  to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein," "granted to said State" "the whole of those swamp and overflowed lands, made unfit thereby for cultivation." "Provided, however, that the proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied, exclusively, as far as necessary, for the purpose of reclaiming said lands by means of the levees and drains aforesaid."

By Chapter 610, approved January 6, 1855, the State placed the lands granted to it by said Act of Congress.in the "Internal Improvement Fund, of the State of Florida," and the lands were "irrevocably vested in five trustees," who are State officers, and their successors in office, to hold the same in trust for the uses and purposes" set out in the Act. The trustees were given power to sell and transfer the lands for the purposes of the trust. One of the purposes of the trust was to aid in the construction and equipment of a stated system of railroads in designated portions of the State, by pledging lands of the fund to the payment of interest on bonds issued as authorized by the Act by railroad companies included in the system. Another feature of the trust was and is that the trustees shall "make such arrangement for the drainage of the swamp or overflowed lands, as in their judgment may be most advantageous to the Internal Improvement Fund, and the settlement and cultivation of the land." The legislature reserved the right to grant to railroad companies under stated conditions, the alternate sections of the swamp and overflowed lands for six miles on each side of such railroads. See sections 616, 617,

620, 621, General Statutes of 1906; Trustees v. St. Johns Ry. 16 Fla., 531; Trustees v. Gleason, 15 Fla., 384.

In 1883 the sections of the General Statutes first above quoted were enacted and the appellee is claiming thereunder. The legislature did not lose control of the lands "irrevocably vested" in the trustees. All the authority possessed by the legislature with reference to the lands before the passage of chapter 610 was possessed after its passage except that no vested rights could be impaired by subsequent legislation. The powers and duties of the trustees with reference to the lands were and are subject to legislative control when property rights of third persons are not involved. While acting within their statutory authority the discretion of the trustees when exercised in good faith and with due regard for the trusts committed to them, will not be controlled by the courts; but if the lands vested in the trustees for the purposes of the trusts are not necessary for the execution of the original public trusts that are actually being performed and for which performance obligations have been assumed by the trustees, the legislative direction that the lands be sold in small quantities at a greatly reduced price to actual settlers should be observed by the trustees. The bill of complaint does not allege that the lands claimed by the appellee are or may most probably be needed to meet the obligations assumed or contemplated by the trustees in the present actual execution of any of the original existing trusts committed to them. While the courts will not force the trustees to perform a later trust to the neglect of an existing original trust actually being performed where it appears that the lands are not sufficient for both trusts, yet if it does not appear that the lands are insufficient for both trusts, the superior power of the legislature to direct the disposition of the lands must be recognized and enforced by the court.

Under the allegations of the bill of complaint admitted by the demurrer the appellee is entitled to a statutory purchase of the land claimed upon compliance with the requirements of the statute in all respects. The trustees do not make it appear that a compliance by them with the Act of 1883 with reference to sale to actual settlers will impair vested rights or render it impracticable to execute any of the existing original trusts which are now being actually performed and as to which obligations have been assumed or contemplated as necessary for the performance of the existing original trusts that will require the use of the land which appellee claims the right to purchase at a nominal price under a statute subsequent to the one creating the original trusts.

The order overruling the demurrer is affirmed.

All concur except TAYLOR, J., absent on account of illness.