WILSON CYPRESS COMPANY, A CORPORATION, *Appellant*, v. JOHN W. MARTIN, GOVERNOR, ERNEST AMOS, COMPTROLLER, J. C. LUNING, STATE TREASURER, RIVERS BUFORD, ATTORNEY GENERAL, AND NATHAN MAYO, COMMISSIONER OF AGRICULTURE OF THE STATE OF FLORIDA, COMPOSING THE TRUSTEES OF THE INTERNAL IMPROVEMENT FUND OF FLORIDA, *Appellees*.

Division B.

Opinion Filed April 15, 1926.

656

*Cooper, Knight, Adair, Cooper & Osborne,* for Appellant;

*J. B. Johnson, for Appellees.*

LEWIS, Circuit Judge.—By an Act of Congress approved September 28, 1850, the United States granted to this State all of the swamp and overflowed lands belonging to the United States in the State of Florida, the fee simple title to the lands to vest in the State upon a patent to be issued to the State therefor, predicated upon accurate lists and plats of the lands to be made by the Secretary of the Interior and transmitted to the Governor of the State. Byrne Realty Co. v. South-Florida Farms Co., 81 Fla. 805, 89 South. Rep. 318; Little v. Williams, 231 U. S. 335, 34 Sup. Ct. Rep. 68. By Chapter 610, Laws of Florida, the lands were vested in five State officers and their successors in office as "Trustees of the Internal Improvement Fund of the State of Florida," whose trust duties were prescribed in the statute, a primary duty being to pay "the necessary expense of selection, management and sale" of the land. Whether for lack of Congressional appropriation to meet the expense or for other reasons, the Secretary of the Interior failed to make and transmit to the Governor of the State lists and plats of the lands as required by the granting act, and the State official Trustees, in order to facilitate the selection of the granted lands so that patents could

be issued therefor to be used for the purposes of the statutory trust, on March 15, 1884, by resolution employed Col. John A. Henderson, as agent "to make further selections of lands granted to the State.by Act of Congress, September 28, 1850, and to procure the proofs required by the regulations of the United States Land Department for the approval of such selections, he to incur all the expense necessary to make the selections and proof required, and to receive as compensation for such service not exceeding two cents per acre upon the amount of such selections which may be patented to the State, and to be paid in such lands at schedule prices." The agent so employed, made many selections and proofs for patents to be issued to the State under the Act of 1850, among them being the unsurveyed and unpatented lands in controversy. It does not appear that by any action taken by the Trustees the Agent was given any privilege or preference in entering or selecting land to be applied to his compensation as Agent. He had no lien on any of the lands for his services as selecting agent.

On June 1, 1889, the Agent, in writing, "bargained and sold to" Henry S. Wilson, his heirs and assigns, what purported to be the agent's "right of first entry of and to the selections" of the described unsurveyed and unpatented land here involved, aggregating 1553 acres, and "authorized deeds to be made to the said Henry S. Wilson or his assigns and the same to be charged to my account for compensation." This instrument was addressed to; and filed in the office of L. B. Wombwell, the Commissioner of Agriculture, who had supervision of matters pertaining to the public lands and who was one of the five State official trustees of the swamp and overflowed lands and the salesman for the trustees. He gave a certificate that the unsurveyed and unpatented lands described in the certificate "were

selections for the State of Florida made under the Swamp Land Act of Congress of September 28, 1850,'' and ''That John A. Henderson is the Agent of said State therefor and made the selections covering these lands. That the expense of such selections are the first lien of lands granted by said Act, that for his compensation the said Agent has first right of entry of lands embraced in these selections and that the amount of compensation for selections to be paid said agent far exceeds the price of these lands and that the said lands when patented will be held for deed to Henry S. Wilson, of East Saginaw, Michigan, his heirs and assigns under order of John A. Henderson, Agent, aforesaid, a copy of which order is now on file in this office.'' Wilson assigned the paper to the Wilson Cypress Company, a corporation.

The printed Minutes of the Trustees of the Internal Improvement Fund contain the following:

''1. The officers of this Board shall consist of a President, Secretary, Salesman and Treasurer.

''4. It shall be the duty of the Salesman to make all sales of lands under such rules and regulations as may be established by the Board. He shall keep and preserve all books, maps, charts, papers, documents and evidence appertaining to or concerning said lands; and shall report monthly to the Board the quantity of land sold and the amount of purchase money received therefor.

''9. Any person desiring to purchase Internal Improvement or swamp lands may do so by making application therefor to the Salesman, whose duty it shall be, if the tract applied for be vacant and subject to entry to give to said applicant a certificate of that fact, stating the number of acres in the tract and the price per acre. Upon the presentation of such certificate to the Treasurer, it shall be his duty to receive the purchase money from the applicant and give his receipt therefor; and upon the filing of such

receipt in the office of the Salesman, said Salesman shall prepare a deed for the signature of the Trustees conveying said land to the purchaser, and may deliver to said purchaser a certificate of purchase for the land." Minutes Trustees I. I. Fund, Vol. 2, pp. 156, 157.

"*Resolved,* That L. B. Wombwell, Commissioner of Agriculture, be and he is hereby declared to be the Salesman of this Board." Minutes Trustees I. I. Fund, Vol. 4, p. 5.

There is no statutory or contract lien upon the lands of the Internal Improvement Fund for expenses in administering the Fund. The Trustees had no authority to give such a lien and did not assume to do so. While under the quoted trust statute the expenses of the Fund should be and have been paid out of the assets of the fund before other claims are paid (Yager v. McNeill, 60 Fla. 400, 53 South. Rep. 12), yet there is and was no lien for expenses, and the agent had no right to select particular lands for his compensation, at least without the acquiescence of the Trustees. Byrne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 South. Rep. 318. Nor did the Commissioner of Agriculture as one of the Trustees or as their Salesman have authority to confirm selections for the agent. It does not appear that the State Trustees gave the Agent "a first right of entry" of lands, or that the Trustees authorized the Agent to make any particular entries of or selections of lands for his services. Nor does it appear that the State Trustees knew of the filing in the office of the Commissioner of Agriculture of the instrument given by the Agent to Wilson, or knew of or authorized the certificate given by the Commissioner of Agriculture to Wilson, at least until December 23, 1904. Prior to the action taken by the Trustees on December 23, 1904, as to complainant's claim, the Trustees, on November 21, 1904, in defining their policy under the trust act, Chapter 610, stated of record, among other things that "*Whereas,* The said act creating the said

trust has not been repealed and remains in full force and effect, and the Trustees named therein continue the powers and functions therein granted in the management of the trust fund created by said act; and

"*Whereas,* The Trustees are not by said trust act, or otherwise and have never been, authorized or empowered by law to issue certificates or otherwise obligate themselves by instruments of writing, or otherwise to convey lands to be thereafter patented to the State, under the provisions of the act of Congress of September 28, 1850, or to dispose of the lands or properties of the fund for purposes other than as expressed in the act of Congress of September 28, 1850, and the act of the Legislature of Florida of January 6, 1855; and

"*Whereas,* Individual Trustees were not authorized by law to bind the fund, nor their successors, by certificates, resolutions, or otherwise except in the final consummation of contracts or in the execution and delivery of deeds as contemplated by law.

"*Therefore,* Be it resolved by the Trustees of the Internal Improvement Fund of the State of Florida, all being present:

"(1) That the Trustees adhere strictly to the provisions of the act of January 6, 1855, Chapter 610, Laws of Florida, as to their powers, and duties and the purposes for which said trust was created, and that they will assert their rights and defend the title to the lands granted and irrevocably vested in them for the purposes therein set forth, of reclaiming said lands by means of levees and drains.

"(2) That the Trustees of the Internal Improvement Fund of the State of Florida, had no legal right, authority or power to bind their successors by means of certificates or instruments of writing or obligations other than duly executed deeds passing the legal title to lands of the fund,

and that all certificates or other instruments of like character, tenor and effect, issued by the predecessors of these Trustees be and the same are hereby declared to be of no binding force or effect, and are hereby specifically and separately revoked and annulled, and each and every of the above mentioned and referred to applications and petitions for lands are hereby denied and the former declination of the Trustees on the various applications made are hereby confirmed.''

On December 23, 1904, ''Mr. Henry S. Wilson of Palatka, Florida, appeared before the Trustees and presented copies of original correspondence on file with the Commissioner of Agriculture to the effect that the late John A. Henderson as State Agent had transferred to the said Henry S. Wilson the preferred right to enter a tract of 1553 acres of land as described and set forth in said correspondence, which tract is unsurveyed and unpatented.

''After consideration of his application it was

''RESOLVED, That Mr. Henry S. Wilson be granted a preference which shall be construed to mean a preference to enter the tract of 1553 acres unsurveyed mentioned when patented, upon such terms, conditions and considerations as the Trustees may determine upon. The Trustees are not sufficiently advised in the premises to pass upon any question other than one of preference.''

On November 15, 1897, the Trustees of the Internal Improvement Fund in making a final settlement with the selecting agent, stated of record that more than 3,000,000 acres had been selected by the agent and ''that under the law'' his ''compensation * * * is payable first to such agent out of all lands when patented, and prior to the rights of all grantees, under grants; and as full compensation for his services as such agent.''

''*Resolved*, That the Commissioner of Lands and Immi-

gration be and he is hereby directed to withdraw from sale and further disposal by this Board, and that when patented to the State, the Board will convey to the said Henderson, or to his assigns, the lands of a stated list in full settlement of his compensation for services as State Agent for the selection of Swamp and Overflowed Lands accruing or to accrue to the State under the Act of Congress of Sept. 28, 1850, up to the date of this resolution.''

On December 27, 1904, the lands withdrawn from sale and reserved for the agent as his full and final compensation, were conveyed to the heirs of the agent who had died in August, 1904.

The contention here is that the instrument given by the agent to Wilson and filed in the office of the Commissioner of Agriculture and the certificate given to Wilson by the Commissioner of Agriculture were recognized by the resolution of the Trustees of December 23, 1904, and give the complainant an equitable right in the unsurveyed and unpatented lands here involved, and it is prayed that relief somewhat in the nature of specific performance with incidental injunctions, &c., be granted. The chancellor dismissed the bill and complainant appealed.

The State has at best only an inchoate interest in or title to the unsurveyed and unpatented lands here involved (Little v. Williams, 231 U. S. 335, text 340, 34 Sup. Ct. Rep. 68; Byrne Realty Co. v. South. Florida Farms Co., 81 Fla. 805, 89 South. Rep. 318, Rogers Locomotive Machine Works v. American Emigrant Co., 164 U. S. 559, 17 Sup. Ct. Rep. 188), and even if this suit covers a justiciable matter as between the parties thereto, there is nothing in the law or in the employment of Col. Henderson as selecting agent or in any action taken by the Trustees, that gave him a lien on or a right to select or to make entry for the particular lands for services rendered, or that makes the document given by Col. Henderson to Wilson or its filing in the State

Land Office, taken with or without the certificate issued by the Commissioner of Agriculture, in any way binding on or an obligation of the Trustees affecting the authority, rights and duties of the Trustees in the disposition of the lands. The document does not appear to have been known to or recognized by the Trustees prior to the resolution of December 23, 1904, if they had authority to give it any effect whatever. The certificate dated June 1, 1889, given by the Commissioner of Agriculture to Wilson does not appear to have been authorized by the Trustees, even if the Trustees had power to authorize it. Such certificate conveyed no rights to Wilson or to his principal affecting the unsurveyed and unpatented lands referred to. Neither the law nor any action taken by the Trustees gives any legal effect to the certificate from the Commissioner of Agriculture to Wilson as an interest in the lands. The statutes and the resolutions of the Trustees do not confer upon the Commissioner of Agriculture as salesman or otherwise the powers that are by law vested in the Trustees of the Internal Improvement Fund.

The resolution and rules of the Trustees did not authorize the Commissioner of Agriculture who was the Salesman of the Trustees to give a certificate like the one given by the Salesman to Wilson, and no ratification of such certificate is shown, if the Trustees had authority to confirm or to ratify such action by the Comissioner of Agriculture and salesman of the Trustees.

The action taken by the Trustees on December 23, 1904, merely gave to the complainant's assignor "a preference to enter the tract of 1553 acres unsurveyed when patented, upon such terms, conditions and considerations as the Trustees may determine upon." This was not a recognition of any right in the selecting agent as is asserted in his letter to the Commissioner of Agriculture, or the recognition of any right in the selecting agent's assignee affecting the

lands except that the Trustees would allow the assignee a preference in buying or entering the lands "when patented, upon such terms, conditions and considerations as the trustees may determine upon." The selecting agent was entitled to compensation for his services "not exceeding two cents per acre upon the amount of such selections which may be patented to the State, and to be paid in such lands at schedule prices." If the Trustees in compensating the agent for his services in selecting lands for patents had customarily given the agent a preference in entering or buying lands or a "right of first entry," it was merely a gratuitous privilege, and in view of the trust fund cannot be regarded as a property or contract right. The compensation was to be for "selections which may be patented to the State," and the agent was "to be paid *in such lands* at schedule prices." Whatever may be the effect of the document given by the agent to Wilson, the lands mentioned therein had not been patented when the assignment was made and have not yet been patented to the State, and the selecting agent had no interest in or lien or other claim on particular unpatented lands that might later be patented to the State.

Before the action taken on Wilson's claim by the resolution of December 23, 1904, the Trustees had on November 21, 1904, resolved that "Individual Trustees were not authorized by law to bind the fund, nor their successors, by certificates, resolutions or otherwise except in final consummation of contracts or in the execution and delivery of deeds as contemplated by law;" and the settlement made on December 27, 1904, with the heirs of the selecting agent did not include the lands in controversy and did not recognize or give effect to the complainant's claim to particular unpatented lands mentioned in the document given by the selecting agent to Wilson in 1889. The lands have not been patented and no deeds made "to be charged to" the agent's

"account," and the Trustees have not acceded to the agent's request.

The settlement made November 15, 1897, with Col. Henderson for his services had no reference to the document given by him to Wilson, the lands in controversy having not been patented to the State, and they were not in anticipation of a patent reserved by the Trustees for or sold to Col. Henderson or set aside for or charged to him in payment for his contract services or otherwise, and he had no interest in the particular lands that he could transfer to Wilson. The agent's right to compensation for services rendered was for "such selections which may be patented to the State, and to be paid in such lands at schedule prices." This gave him no right in particular lands; and the Trustees gave no such right if they had the power to do so. The agent was to be paid in patented lands to be conveyed by the Trustees pursuant to the trust. The law regulates the sales of lands by the Trustees; and the action taken by the Trustees on December 23, 1904, if of any legal or equitable efficacy whatever, merely indicates that under similar and equal circumstances the Trustees will give Wilson a preference in purchasing the lands when the inchoate title of the State is perfected by a patent duly issued, the terms and conditions of the sale and purchase to be fixed by the Trustees, who of course must comply with controlling statutes. See Trustees of Internal Imp. Fund v. Root, 59 Fla. 648, 51 South. Rep. 535; Trustees Internal Improvement Fund v. Root, 63 Fla. 666, 58 South. Rep. 371; Everglades Sugar & Land Co. v. Bryan, 81 Fla. 75, 87 South. Rep. 68.

Affirmed.

BROWN, C. J., AND WHITFIELD AND STRUM, J. J., AND JONES AND CAMPBELL, Circuit Judges, concur.

ELLIS, TERRELL AND BUFORD, J. J., disqualified.