BYRNE REALTY COMPANY, A CORPORATION ORGANIZED· AND
  EXISTING ·UNDER THE LAWS OF THE STATE OF FLORIDA;
  THE BARNETT NATIONAL BANK, A CORPORATION ORGAN-
  IZED AND EXISTING UNDER THE LAWS OF THE UNITED
  STATES (SUCCESSOR TO THE NATIONAL BANK OF JACK-
  SONVILLE); AND WILLIAM T. ABBOTT, *Appellants,* v.
  SOUTH FLORIDA FARMS COMPANY, A CORPORATION OR-
  GANIZED AND EXISTING UNDER THE LAWS OF THE STATE
  OF FLORIDA, *Appellee.*

Opinions Filed June 6, 1921.

Petition for Rehearing Denied August 3, 1921.

1. A cross-bill must be germane to and auxiliary to the original
   bill and pray for affirmative relief concerning matters in liti-
   gation under the original· bill.

2. Chapter 6907, Acts of 1915, does not· forbid the use of cross-
   bills in proper cases, though the statute ·expressly provides
   for obtaining affirmative relief upon answers in classes of
   cases stated in the act.

3. In a cross-bill seeking affirmative relief ·new parties may
   be added, whose presence is essential to a complete de-
   termination of the matter.

4. A cross-bill must be as complete and perfect as an original
   bill.

5. A cross-bill is demurrable where it does not contain· the al-
   legations necessary to show that the cross complainant is en-
   titled to relief, where it is uncertain and indefinite in, its al-
   legations as to· those matters on which counter relief is
   sought, or where, seeking relief which is of an equitable na-
   ture, it does not contain all the ·proper allegations which
   ·confer an equitable title to such relief.

6.  A cross-bill is defective when it is uncertain and indefinite as to those matters on which counter relief is sought.

7.  It is incumbent upon a complainant to allege in his cross-bill, clearly and definitely, every fact that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing.

8.  A demurrer containing appropriate specific grounds does not admit asserted conclusions that are not sustained by proper allegations, or that are contrary to law. Nor does it admit allegations that are contradicted by records of which the court may take judicial notice.

9.  It is incumbent upon the complainant in a cross-bill to allege all the ultimate facts that are essential to show the equity upon which he relies for the relief prayed.

10.  If an equity is not duly alleged in a cross-bill it is demurrable. If from the facts alleged an equity may be implied, but the allegations show that a once potential equity has been extinguished by laches or otherwise, then there is no existing equity and the bill is subject to appropriate demurrer.

11.  A lawful subject-matter and competent parties having appropriate authority in the premises are requisite to the creation of an express trust.

12.  In order to create an express trust, the subject, object and terms of the trust must be definitely stated by competent authority; and in order to be enforced by judicial proceedings, the trust must be evidenced as may be required by law.

13.  Where the declaration or creation of an express trust in lands is by statute required to "be manifested and proved by some writing signed by the party authorized by law to declare or create such trust," the subject, object and

terms of the trust must be definitely expressed in a writing executed by an authorized party as the statute provides, or the trust cannot be proved for judicial enforcement.

14. The perfect title of the State to swamp and overflowed lands under the Act of Congress approved September 28, 1850, does not vest in the State until the patent covering the lands is issued.

15. While the expenses of selecting the lands to be patented to the State may be a prior claim against the lands of the fund, such claim gives no right to select or sell particular lands unless the selection or sale is *duly* recognized or acquiesced in by the Trustees within their statutory powers, or is adjudged by appropriate judicial proceedings.

16. The allegations here considered do not show that the Trustees of the Internal Improvement Fund authorized the issuance of a certificate made by the Commissioner of Agriculture that lands therein described would by the Trustees be conveyed to a named person or to his order when the patents to the lands may be received by the State. Nor does the certificate create a trust in the lands under the showing made.

17. Where it is alleged that pursuant to a contract to sell all the lands the vendor may receive from a certain source, the vendor endorsed in blank and delivered to the vendees a certificate made by another person in which certain lands were described, and the vendor received an "initial payment" "as provided in the contract," and also another payment "on said contract" under and in pursuance of the provision of a contract that certificates should be delivered in proportion as payments are made thereon," and the price to be paid per acre by the contract and other terms of the contract are not given, such allegations as they appear with others in this case, do not show a completed equitable title in the vendees to the particular lands.

18. Where particular allegations show that a possible potential equity once existed in lands, but other allegations of the

pleading show the loss of such right by laches, if any existed, a. demurrer to the bill of complaint is properly sustained.

19. Where a certificate describing lands is in 1892 endorsed in blank and delivered to alleged vendees upon the payment of money under a contract of sale, but it does. not appear that the entire contract price was paid, and deeds were not applied for when patents were issued in 1903 as contemplated by the certificate in which the lands were described, and no assertion of rights by virtue of the certificate and the payments. made thereon pursuant to the previous contract are made till 1917, thirteen years after the death of the alleged vendor and after the lands were held by the heirs of the vendor for years under a recorded title and then conveyed by them to other parties, the equity, if any, was acquired by the vendees, in the particular lands, is extinguished by laches.

An Appeal from an Order of the Circuit Court for De Soto County; John S. Edwards, Judge.

Decree affirmed.

*N. B .K. Pettingill* and *Arthur F. Odlin,* for Appellants;

*Alex. St. Clair-Abrams, Gramling & Clarkson, John W. Henderson* and *S. D. Clarke,* for Appellees.

## STATEMENT.

. On May 16, 1917, the. South Florida Farms Company, a corporation, filed its bill of complaint against Byrne Realty Company, a corporation, The Barnett National Bank, a corporation (successor to the National Bank of Jacksonville), and William. T. Abbott, alleging in sub-

stance that on or about October 20, 1914, complainant
purchased described lands from named persons who ob-
tained title to the lands from the Trustees of the Internal
Improvement Fund of the State of Florida as the heirs
of John A. Henderson; that complainant "did then and
there go into and now remains in actual possession of
said lands, paying taxes thereon and exercising acts of
ownership thereof;" that complainant further "says that
it is alleged and claimed that in the year 1890 one James
M. Kreamer and J. J. Dunne entered into a contract of
purchase with John A. Henderson, now deceased (father
of your orator's grantors) for the purchase of the lands
described above, your orator is informed and believes and
so alleges that if any such contract was entered into the
said Kreamer and Dunne utterly failed and neglected to
comply with the contract of purchase or to pay the
amount agreed upon; and, by reason of their default in
such payments, have forfeited all rights to a performance
of the contract and ceased utterly to have any right,
title or interest in said lands; that at the time of the
contract of purchase the said John A. Henderson had no
right, title or interest in said property, but only an
equitable claim for lands on account of services rendered
by him to the Trustees of the Internal Improvement Fund
of the State of Florida; that the lands described above had
not been patented to the State of Florida by the Govern-
ment of the United States; that, notwithstanding this, L.
B. Wombwell, Commissioner of Agriculture of the State of
Florida, as your orator is informed, executed a certificate
(covering the lands), a copy of which is hereto annexed
and marked Exhibit "A," which your orator prays may be
taken as part of this bill; that the said Wombwell was
without authority of law, by virtue of his office or by any
authority from the Trustees of the Internal Improvement

810 SUPREME COURT OF FLORIDA.

Byrne Real. Co. et al. v. S. F. F. Co.—Statement.

Fund, to execute said Certificate; that the Trustees of the Internal Improvement Fund never authorized the said Wombwell to execute said certificate and that said certificate was and is absolutely void and could not convey, either to the said John A. Henderson or to any of his heirs or assigns, any right, title or interest, either at law or in equity, in and to the lands therein described."

There are other allegations not necessary to be stated here, that relate to claims through or by the defendants to rights in the lands under the certificate referred to as "Exhibit A," with prayers for appropriate relief against the said certificate and the uses made of it, as a cloud upon complainant's title to the lands. Exhibit "A" referred to is as follows:

### " 'EXHIBIT A.'

'I, Lucius B. Wombwell, Commissioner of Agriculture of the State of Florida, in whose custody as such Commissioner of Agriculture aforesaid are all the maps, plats and records of the public lands of the State of Florida, do hereby certify that Jno. A. Henderson has applied to enter on his account as State Selecting Agent all the following described lands, to-wit:

(Description omitted)

making a total of 15,961 acres.' "

" 'I further certify that the said land will be conveyed to the said Jno. A. Henderson or to his order as soon as the same has been patented to the State of Florida.

'In testimony whereof I have hereunto set my hand and affixed the seal of the Department of Agriculture at

Tallahassee, the Capitol, this the 13th day of June, A. D. 1892.

(SEAL)          'L. B. Wombwell, Commissioner of
                'Agriculture of the State of Florida.

'Endorsed " 'John A. Henderson.' "

The Byrne Realty Company and William T. Abbott answered, but not under oath, the oath being expressly waived by the bill of complaint.

On July 10, 1917, the defendant, William T. Abbott, filed a cross-bill against the defendant, South Florida Farms, Company, and the heirs of John A. Henderson, in which it is alleged in substance that "John A. Henderson in his lifetime, to-wit: in the year 1884 made and entered into a contract with the Trustees of the Internal Improvement Fund of the State of Florida whereby he was employed by said Trustees to obtain from the United States selections and patents of such swamp and overflowed lands within the boundaries of said State as it was entitled to under the Act of Congress in that behalf, but which the State had up to that time failed to receive, and under the terms of which contract he was entitled to compensation at the rate of two cents for each acre of swamp and overflowed land so selected as a result of his labors and to be patented to the State, payable out of such of said lands as might be thereafter selected and specified by him at the sale price fixed from time to time by said Trustees. That said right of selection on the part of the said Henderson was recognized by said Trustees as an expense of the administration of their trust and, as such, prior in right to any other disposition to be made of said lands; and that, upon written request made by said Henderson to the Commission-

er of Agriculture, who was the member of said Board of Trustees having custody and control of all the records of said swamp and overflowed lands and of the preparation of all transfers thereof, said Commissioner of Agriculture was authorized, and it was his custom, to issue to said Henderson (in case the lands selected and specified had not yet been patented to the State) certificates in the form and to the effect exemplified by said 'Exhibit A' attached to the original bill of complaint herein.

That the employment of said Henderson under the contract aforesaid continued until and after the year 1892, and on the 13th day of June, 1892, said Henderson was entitled, as compensation already earned under said contract, to have deeds or certificates (according as the lands selected had or had not been patented to the State) to many thousand of acres more than the total of all lands which had heretofore been so deeded or certificated together with the number of acres included in said certificate so as aforesaid attached to the original bill as 'Exhibit A.' That being so entitled, said Henderson did on or before said 13th day of June, 1892, request the Commissioner of Agriculture to issue to him, on account of his compensation aforesaid, the certificate so attached as 'Exhibit A,' and said certificate was issued in compliance with said request pursuant to the authority delegated to him by said Trustees as aforesaid. That said Henderson was at that time entitled to select the lands described in said certificate, and did so select them, on account of his compensation under said contract, that the only reason why conveyance of the legal title to said lands was not made to said Henderson at that time was because such legal title had not been transferred by patent from the United States to the State; and that from the date of the selection of said lands by said Hender-

VOL. 81, JANUARY TERM, 1921.         813

Byrne Real. Co. et al. v. S. F. F. Co.—Statement.

son and his notification thereof to said. Commissioner of
Agriculture the said Trustees held the equitable title—
and, after the issuance of patent by the United States to
the State, the legal title—to the same in trust for the
benefit of the said John A. Henderson, his heirs and as-
signs.

## II

"That in and by said certificate 'Exhibit A,' it was pro-
vided, and said Trustees through said Commissioner of
Agriculture thereby represented and promised that a deed
to the lands described therein should be executed and de-
livered to said Henderson, or his order, upon the return
of said certificate endorsed by him, as soon as said lands
should be patented to the State of Florida by the United
States; that said original Certificate is now in the pos-
session of this cross-complainant, ready to be produced
as this Court may direct; and that the copy thereof at-
tached to the original bill herein as 'Exhibit A' is a true
copy thereof. And it is prayed that said copy may, for
the purpose of convenience, be deemed to be a part of this
cross-bill.

## III

"That on the 15th day of July, 1890, said John A. Hen-
derson entered into a contract with J. M. Kreamer and
J. J. Dunne, whereby it was agreed, after reciting the
substance of the above contract between said Henderson
and said Trustees and the right of the former to a con-
veyance thereunder of some fifty to seventy-five thousand
acres of land, that said Henderson should sell to said
Kreamer & Dunne all the land to be received by him un-

der said contract (after providing for certain contingencies specified) at certain price per acre therein expressed; and that the 5th and final paragraph of said contract read literally as follows, to-wit:

" '5th. The said Henderson agrees that for all the lands that the said Kreamer & Dunne may designate he will have the State of Florida issue 'Certificates' whenever they shall desire and the same shall be delivered to the said Kreamer & Dunne in proportion as they may make payments on this contract, or the whole may be deposited in escrow, subject to the payment of the balance of the purchase money.'

"That thereafter the said Kreamer & Dunne paid to the said Henderson the initial payment of six thousand dollars, as provided in said contract, and elected the option given in the paragraph thereof above quoted that land Certificates should be obtained by said Henderson and delivered to said Dunne & Kreamer in proportion as they might make payments thereon; that subsequently and on or about the 11th day of August, 1892, the said Kreamer & Dunne, through the National Bank of Jacksonville, Florida, paid to said Henderson on said contract the additional sum of Five Thousand Dollars, that said land certificate attached to the original bill herein as 'Exhibit 'A,' together with another land Certificate for 9,840 acres attached to said original bill as 'Exhibit B,' was delivered to said Dunne & Kreamer by said Henderson, in consideration of said two payments amounting to the sum of $11,000 under and in pursuance of the provision of said contract above quoted that Certificates should be delivered to them in proportion as they might make payments thereon; that, although said Certificate 'Exhibit A' is dated, and was probably issued to said Henderson on

the 13th day of June, 1892, the same was not endorsed on the back by said Henderson and delivered by him to said Kreamer and Dunne on or about the date of the payment of said five thousand dollars as aforesaid. and that by such endorsement, transfer and delivery all the right, title and interest acquired by said Henderson under said certificate in and to the lands therein described passed to and became vested in the said Kreamer & Dunne.

## IV.

"That, as above alleged, from the time of the issuance and delivery of said Certificate 'Exhibit A' the said Trustees of the Internal Improvement Fund held the equitable title to the land in the same described in trust for the benefit of said John A. Henderson or his assigns until the legal title to the same, together with some millions of acres of other swamp and overflowed land was conveyed by the United States to the State of Florida, which was done by patent dated the 29th day of April, 1903; that thereafter the Trustees held the legal title to said lands under a like trust until the death of said Henderson, which occurred in the month of August, 1904; that soon after the said death of John A. Henderson, his heirs above named applied for and obtained from said Trustees, in full compliance as they alleged with the amount due him for services as agent of said Trustees as aforesaid, a deed which covered a large area of land and included the same 15,961 acres described in 'Exhibit A' and involved in this cross-bill, which deed was dated the 28th day of December, 1904, was filed for record in the office of the Clerk of this Court on the 4th day of April, 1905, and is found recorded in Deed Book 52 at page 41;

that the said trust which had attached to said land described in 'Exhibit A' from the time of its issuance and delivery to said Henderson in 1892 to his death in August, 1904, passed at once upon his death to his said heirs with respect to the equitable title and attached to the legal title when said heirs received the same by virtue of the deed aforesaid dated December 28, 1904; and that said heirs received said legal title charged with and subject to the same obligation to convey said lands to the holder or holders of said certificate 'Exhibit A' as their ancestor, the said John A. Henderson, had held his equitable right while living and would have held the legal title had he lived to acquire the same.

## V.

"That the defendant heirs aforesaid of said John A. Henderson continued to hold the legal title to the land described in said certificate 'Exhibit A,' as well as the other lands included in said deed from said Trustees dated December 28, 1905, subject to said obligation to convey the same to the holders of said certificate until the conveyance of the same by said heirs to their co-defendant, said South Florida Farms Company, which conveyance (although dated the 20th day of October, 1914) was not delivered and made effective, as this cross-complainant is informed and believes, until sometime in the month of December, 1915, and which was filed for record in the office of the Clerk of this Court on the 27th day of December, 1915, and is found recorded in Deed Book 123, on page 185; that, although it is admitted that said certificate 'Exhibit A' was not filed for record in the office of said Clerk until the 14th day of July, 1916, at the time said defendant South Florida Farms Company

closed said purchase from their co-defendants, heirs of John A. Henderson, of lands including those described in said 'Exhibit A' by accepting the deed aforesaid from said heirs, said company, through its proper officers who acted for it in making such purchase, had full notice and knowledge of the existence of said certificate 'Exhibit A' and of the trust obligation in favor of the holders of said certificate, which had existed since the endorsement, transfer and delivery of said certificate by said John A. Henderson as above set forth; and that by reason of the premises said defendant company now holds the legal title to said land, described in said 'Exhibit A' in trust for and under the obligation to convey to this cross-complainant, who is successor to the said Kreamer & Dunne as holders and in the ownership of said certificate and of the right, title and interest in the land therein described originally acquired and held by said John A. Henderson, having acquired the same in the manner now herein to be set forth. The means by which cross-complainant obtained the certificate 'Exhibit A' covering the lands are stated.

## VII.

"That upon the delivery by said defendant heirs of John A. Henderson to their co-defendant South Florida Farms Company of the deed hereinbefore referred to, which covered nearly 100,000 acres of land, including the 15,961 acres described in said certificate 'Exhibit A,' said South Florida Farms Company executed and delivered to said heirs of Henderson a purchase money mortgage upon all the property to it conveyed for the sum of $499,200, which represented all or nearly all of the purchase price of said land; that said mortgage was given to secure 35

promissory notes for the sum of $10,000 each, payable monthly from January, 1916, to November, 1918, and one note for $149,200, payable in December, 1918, all bearing interest at the rate of 6% per annum, and bears date the 1st day of December, 1915, but was not executed until the 14th day of said December, and is recorded in Mortgage Book 20, on page 328, in the office of the Clerk of this Court; and that much the larger part of the amount represented by said notes still remain due and unpaid to said defendant heirs of Henderson and said promissory notes still remain owned by them and in their possession or under their control.

"Therefore this cross-complainant further avers, that, in the event he may not be able to satisfy the Court that defendant South Florida Farms Company had at the time of closing its purchase of said land and the giving of said mortgage knowledge or notice of the existence of said certificate 'Exhibit A' and of the equitable rights of the holder or owner of said certificate thereunder (which this cross-complainant believed to be a fact), he is entitled as against the defendant heirs of Henderson to a decree charging against the purchase money mortgage indtebtedness remaining due from defendant South Florida Farms Company to defendant heirs of Henderson a sum equivalent to the proporition of the total purchase price which the fair value of the 15,961 acres described in the certificate 'Exhibit A' bears to the fair value of the total acreage included in and conveyed to said Farms Company by said deed of October 20, 1914, enjoining the defendant heirs of Henderson from collecting from said Farms Company the sum so fixed and from so disposing of said mortgage notes as to prevent the application of said sum to the benefit of this cross-complainant, and requiring defendant South Florida Farms Company to make equi-

table division of payments still to be made by it upon said notes that cross-complainant may receive his proportion of such payments in accordance with the comparative values so to be fixed and determined as. aforesaid.

## VIII.

"That, although the patent from the United States to the State of Florida conveying the legal title to several millions of acres of swamp and overflowed lands, including the 15,961 acres described in said 'Exhibit A,' was issued in the year 1903, as hereinbefore alleged, said patent has never been recorded in the respective counties where lie the lands described in it, and the fact of its issuance was not known either to this cross-complainant or to the Byrne Realty Company until shortly before the time action was begun to obtain judgment against said Dunne and the executor of Kreamer as hereinbefore set forth.

## IX.

"That this cross-complainant is without any plain, adequate and complete remedy at law in the premises, hence is entitled to seek relief in a court of equity, where matters of the nature of those hereinbefore set forth are alone properly cognizable; and that complete justice and equity may not be done in this behalf by merely answering the original bill filed in this cause by said South Florida Farms Company for the reasons, among other things, that said heirs of John A. Henderson are not parties to such original bill, wherefore it becomes necessary that this cross-complainant file and present to the Court this his cross-bill herein.

"Forasmuch, therefore, as this cross-complainant is without adequate relief in the premises except in this court of equity and by the filing of this cross-bill, he prays affirmative relief as follows:

"I.    That the defendants hereto hereinbefore named, and each of them, be required to make full, true, direct and perfect answer to this cross-bill—but not under oath, the answer under oath being hereby expressly waived.

"2.    That said defendant South Florida Farms Company be found to have acquired the title to the 15,961 acres of land, more or less, described in said certificate 'Exhibit A' with notice of the equitable rights therein possessed by the holder of said certificate, and be decreed to hold the legal title in fee therein as trustee for William T. Abbott, cross-complainant, and be required to make and execute and deliver to him a proper deed of conveyance to the same; and that the mortgage for purchase money given by said South Florida Farms Company to defendant heirs of John A. Henderson and placed on record, as hereinbefore described, be cancelled and discharged of record, in so far as the same includes and affects the land described in said certificate and to be conveyed to this cross-complainant as above prayed.

"3.    That the defendant heirs of John A. Henderson be decreed to have inherited from their said father no greater rights in the land described in said certificate 'Exhibit A' than their father possessed after he had endorsed, transferred and delivered said certificate to said Kreamer and Dunne, and to have held the legal title to said lands, after the conveyance of the same to them (together with other lands) by the deed of said trustees dated December 28, 1904, as trustees for the holder or holders of said certificate pursuant to its terms.

"4. That, as an alternative prayer, in the event the Court find that defendant, South Flordia Farms Company, acquired said land described in said certificate, and the legal right to the same, without knowledge or notice of the existence of said certificate and the equitable rights of the holders thereof, then it be decreed that this cross-complainant is entitled to receive from said South Florida Farms Company such part of the purchase money mortgage indebtedness remaining due from it to said defendant heirs of John A. Henderson as the fair value of said 15,961 acres bears to the fair value of the total acreage included in said deed of December 28, 1904; that said Farms Company be required to make equitable division of the payments still to be made by it to said heirs of Henderson under the terms of the purchase money mortgage and notes in the proportion aforesaid; and that the defendant heirs of Henderson be enjoined from collecting from said Farms Company the proportion of said payments so decreed to belong to this cross-complainant, and from so disposing of any of said mortgage notes as to prevent or impede the performance of the above provision for division of payments, and be further required and enjoined to accept such proportion of said payments as may be decreed to them, and to give and deliver partial or total release of discharges of the lien of said mortgage upon payments being made by defendant Farms Company as so decreed.

"5. That in the event this court grant relief to this cross-complainant as prayed in the above prayer numbered 4, an account may be taken under the authority of this court of all taxes and assessments lawfully assessed upon the said land described in said certificate 'Exhibit A' and paid either by defendant South Florida Farms

Company or by defendant heirs of John A. Henderson since they have respectively held the legal title thereto. And this cross-complainant now stands ready and hereby offers to pay, in the event aforesaid, whatever amount may be so ascertained, with legal interest thereon, as this Court may direct.

"6. That, in the event this Court denies to this cross-complainant the relief prayed in said prayer numbered 2 but grants him the relief prayed in the above prayer numbered 4, an account may be taken under the authority of this court of all taxes and assessments lawfully assessed upon the land aforesaid claimed by your orator and paid by defendant heirs of Henderson before such payments became the obligation of defendant, South Florida Farms Company. And this cross-complainant now stands ready and hereby offers to allow to be deducted whatever amount may be so ascertained to have been paid, from his proportion of the first payments thereafter coming due from defendant Farms Company upon the purchase money mortgage indebtedness hereinbefore described.

"7. That this cross-complainant may have such other and further relief as equity may require and to your Honor shall seem meet in the premises."

The South Florida Farms Company filed a demurrer to the crossbill on the following grounds:

"1. Under and by virtue of Chapter 6907, Laws of 1915, of the State of Florida, cross-bills are abolished in this State.

"2. Because a cross-bill cannot be maintained unless the complainant in the cross-bill has a legal or equitable claim against the complainant in the original bill.

"3.  Because the bill of complaint shows that the complainant in the cross-bill, William T. Abbott, had no original claim whatsoever against the South Florida Farms Company.

"4.  Because a cross-bill is bad which required the bringing in of new parties to enable the complainant to the cross-bill to set up a claim against the complainant in the original bill.

"5.  Because it appears from the allegations of the cross-bill that there is no equity in it.

"6.  Because the complainant to the cross-bill is seeking to enforce an alleged contract for the purchase of land barred by the statute of limitations.

"7.  Because a contract for the purchase and sale of land must not only be in writing signed by the proposed grantor, but must contain the name of the proposed grantee.

"8.  Because the record of the original bill and the cross-bill shows that the lands in dispute in this case on the alleged contract embodied in the certificate of Wombwell never were assigned to either J. M. Kreamer or J. J. Dunne.

"9.  Because the record shows that Kreamer and Dunne could not legally enforce any claim to the land and the complainant to the cross-bill, William T. Abbott, could have no greater rights than Kreamer and Dunne had.

"10.  Because the Byrne Realty Company possessed no legal or equitable rights in the lands described in the certificate.

"11.  Because Wombwell, Commissioner of Agriculture, was without authority of law to execute the said certificate.

824        SUPREME COURT OF FLORIDA.

Byrne Real. Co. et al. v. S. F. F. Co.—Statement.

"12. Because, under the law, the Trustees of the Internal Improvement Fund were without power to contract to sell or to agree to sell lands not yet owned by them.

"13. Because the Trustees of the Internal Improvement Fund were without power of law to authorize the Commissioner of Agriculture to agree to execute deeds to lands not owned by them and for which they had no patent.

"14. Because the cross-bill is an attempt to enforce a stale claim on an alleged contract for the purchase of land:

"15. Because the complainant to the cross-bill, William T. Abbott, could have no greater legal right to the lands than the Byrne Realty Company had.

"16. Because the mere endorsement of Henderson's name on the certificate did not constitute an assignment of the same to any person."

The other cross defendants filed a demurrer to the cross-bill on the following grounds:

"First—That the said cross-complainant has not in and by his said cross-bill made or stated such a case as entitles him in a court of equity to the relief prayed for against these defendants, or either of them, or to any relief against them, or either of them, as to the matters contained in said cross-bill, or any of such matters.

"Second—That the endorsement of the land certificate mentioned in said cross-bill by John A. Henderson, and the delivery of the same to J. J. Dunne and J. M. Kreamer, conveyed to said Dunne and Kreamer no estate legal or equitable in the lands therein described, and was

not a contract to convey any such estate or interest in said lands.

"Third—That the sale of said land certificate, mentioned in said cross-bill, and the purchase thereof by said cross-complainant, in the manner alleged in said cross-bill, conveyed to the said cross-complainant, no estate, legal or equitable, in the lands therein described, and was not a contract to convey any such estate or interest in said lands.

"Fourth—That said cross-bill shows on its face that said cross-complainant, and those through and under whom he derived his alleged title to the said land certificate mentioned in said cross-bill, and the alleged rights thereunder, in the manner alleged in said cross-bill, have been guilty of gross laches in asserting their alleged claim.

"Fifth—That the said land certificate mentioned in said cross-bill are void and of no effect on their face.

"Sixth—That the said land certificates, mentioned in the cross-bill, was not the subject of collateral pledge."

The first demurrer was sustained on all of its grounds except the 7th and 12th grounds. The second demurrer was sustained. The cross-complainant appealed.

By an Act of Congress approved September 28, 1850, the United States granted to the State of Florida all the swamp and overflowed lands in the State, then remaining undisposed of, the title of the State to be perfected by the location of the lands and the issuance of patents therefor. Chapman & Dewey Lumber Co. v. St. Francis Levee Dist., 232 U. S. 186, 34 Sup. Ct. Rep. 297. When the granted lands are selected, located and designated by survey or otherwise and patents are issued to

the State conveying the lands, the Acts of Congress require the patents to be recorded at Washington, D. C., and such record imparts notice as a matter of law. Wilcox v. Phillips, 260 Mo. 664, 169 S. W. Rep. 55; Evitts v. Roth, 61 Tex. 81; Sands v. Davis, 40 Mich. 14; Lomax v. Pickering, 165 Ill. 431, 46 N. E. Rep. 238; Mason v. Cooksey, 51 Ind. 519; 26 Am. & Eng. Ency. Law (2nd ed.) p. 446; 24 Am. & Eng. Ency. Law (2nd ed.) p. 86.

By Chapter 610, Laws of Florida, approved January 6, 1855, the swamp and overflowed lands conveyed to the State under the Act of 1850, were vested in five States officers who were designated as Trustees of the Internal Improvement Fund of the State to execute the express statutory trusts with reference to the lands. See Morgan v. Dunwoody, 66 Fla. 522, 63 South. Rep. 905.

The "necessary expenses of selection, management and sale" of the lands were to be paid from the fund under the trust Act of 1855. Yager v. McNeill, 60 Fla. 400, 53 South. Rep. 12.

The authorized publication in book form of the "Minutes of the Board of Trustees of the Internal Improvement Fund of the State of Florida," Vol. 3, page 290, contains the following:

"Tallahassee, Fla., March 15th, 1884.
"The board met in the Executive Office.
  "Present:    W. D. Bloxham, Governor.
               "W. D. Barnes, Comptroller.
               "Henry A. L'Engle, Treasurer.
               "P. W. White, Commissioner of Lands and
                 Immigration.
  "'The Commissioner of Lands and Immigration, having been requested to employ a suitable and competent per-

son, as Agent of the Board, to make further selections of lands granted to the State by Act of Congress, September 28th, 1850, and to procure the proofs required by the regulations of the United States Land Department for the approval of such selections, reported that he had employed Col. John A. Henderson, for that purpose, and that he was to incur all the expense necessary to make the selections, and proof required, and to receive as compensation for such service not exceeding two cents per acre upon the amount of such selections which may be patented to the State, and to be paid in such lands at schedule prices—which was approved by the board."

The statutes of the State contain the following:

"All declarations and creations of trust and confidence of or in any messuages, lands, tenements or hereditaments shall be manifested and proved by some writing, signed by the party authorized by law to declare or create such trust or confidence, or by his last will and testament, or else they shall be utterly void and of none effect; provided, always, that where any conveyance shall be made of any lands, messuages or tenements by which a trust or confidence shall or may arise or result by the implication or construction of law, then, and in every such case, such trust or confidence shall be of the like force and effect as the same would have been if this section had not been made, anything herein contained to the contrary in anywise notwithstanding." Sec. 2452, Gen. Stats., 1906.

"All grants, conveyances or assignments of trust or confidence of or in any lands, tenements or hereditaments, or of any estate of interest therein, shall be by deed signed, sealed and delivered, in the presence of two subscribing witnesses, by the party granting, conveying

or assigning, or by his attorney or agent thereunto law-
fully authorized, or by last will and testament duly made
and executed; or else the same shall be void and of none
effect." Sec. 2453, Gen. Stats., 1906.

WHITFIELD, J.; (after stating the facts.)

An original bill was brought against the Byrne Realty
Company, the Barnett National Bank and William T.
Abbott, by the South Florida Farms Company to remove
as a cloud upon its title to certain lands, a certificate
referred to as "Exhibit A," held by Abbott, covering the
lands and the proceedings had upon the certificate ad-
verse to the complainant. The theory of the original bill
is that the certificate was and is void, and that the cer-
tificate and the action taken thereon gives to the defend-
ants no rights in the lands. The defendant, Abbott, hav-
ing answered, filed a cross-bill against the complainant
and against the heirs of John A. Henderson, deceased,
the said heirs being made new parties for the purposes
of the cross-bill. The theory of the cross-bill is that John
A. Henderson acquired from one of the Trustees of the
Internal Improvement Fund, the certificate "Exhibit A,"
covering the lands, for services rendered to the Trustees
of the Internal Improvement Fund of the State, and that
pursuant to a contract previously made with Kreamer
and Dunne, Henderson endorsed and delivered the cer-
tificate to Kreamer and Dunne and received therefor cer-
tain payments as the purchase price of the lands covered
by the certificate, which certificate is now the property
of Abbott, and that the Trustees and Henderson and his
heirs held the title (whether legal or equitable) to the
lands, in trust for the holder of the certificate; and that
if the South Florida Farms Company purchased the

lands with knowledge or notice of the trust, it likewise is a trustee for the holder of the certificate. If the purchaser took without notice of the asserted trust, the proceeds of the purchase price are claimed of the purchaser as against the heirs of John A. Henderson. A demurrer to the cross-bill was sustained and cross-complainants appealed.

Where an appeal is taken from a decree on a cross-bill, rendered on demurrer thereto, the complainant standing on the demurrer, the original bill is properly incorporated in the record, as the court in passing on the demurrer must consider the bills together for the reason that the cross-bill must be germane to and an auxiliary of the original bill and pray for affirmative relief concerning matters in litigation under the original bill. Jones v. Bryant, 204 Ill. App. 609; 21 C. J. 512.

Chapter 6907, Acts of 1915, does not forbid the use of cross-bills in proper cases, though the statute expressly provides for obtaining affirmative relief upon answers in classes of cases stated in the Act. A cross-bill is permissible in this case.

In a cross-bill seeking affirmative relief new parties may be added, whose presence is essential to a complete determination of the matter. Indian River Mfg. Co. v. Wooten, 48 Fla. 271, 37 South. Rep. 731; Price v. Stratton, 45 Fla. 535, 33 South. Rep. 644; 21 C. J. 505.

A cross-bill must be as complete and perfect as an original bill, 21 C. J. 507. A cross-bill is demurrable where it does not contain the allegations necessary to show that the cross-complainant is entitled to relief, where it is uncertain and indefinite in its allegations as to those matters on which counter relief is sought, or where, seek-

ing relief which is of an equitable nature, it does not contain all the proper allegations which confer an equitable title to such relief. 21 C. J. 512; Special Tax School Dist. No. 1 of Dade County v. Smith, 61 Fla. 782, 54 South. Rep. 376.

A cross-bill is defective when it is uncertain and indefinite as to those matters on which counter relief is sought. Jackson v. Relf, 26 Fla. 465, text 470, 8 South. Rep. 184; 5 Ency. Pl. & Pr. 662; Harding v. Olson, 76 Ill. App. 475.

It is incumbent upon a complainant to allege in his bill every fact, clearly and definitely, that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. Godwin v. Phifer, 51 Fla. 441, 41 South. Rep. 597; Gillespie v. Chapline, 59 Fla. 500, 52 South. Rep. 722.

A demurrer containing appropriate specific grounds, does not admit asserted conclusions that are not sustained by proper allegations, or that are contrary to law. See Louisville & N. R. Co. v. Palmes, 109 U. S. 244, 3 Sup. Ct. Rep. 193; Stand. Ency. Proc. 951, et seq.

.The only question to be determined is the sufficiency of the allegations of the cross-bill to state an equity for the relief prayed as against the demurrers thereto.

It is encumbent upon the complainant in a cross-bill to allege all the ultimate facts that are essential to show the equity upon which he relies for the relief prayed. If any equity is not duly alleged in a cross-bill it is demurrable. If from the facts alleged an equity may be implied, but the allegations show that a once potential

equity has been extinguished by laches or otherwise, then there is no existing equity and the bill is subject to appropriate demurrer.

The allegations as to the creation of the asserted equity are in substance:

"That in 1884 John A. Henderson entered into a contract with the Trustees of the Internal Improvement Fund of the State of Florida whereby he was employed by said Trustees to obtain from the United States selections and patents of such swamp and overflowed lands within the boundaries of said State as it was entitled to under the Acts of Congress in that behalf, but which the State had up to that time failed to receive, and under the terms of which contract he was entitled to compensation at the rate of two cents for each acre of swamp and overflowed lands so selected as a result of his labors and to be patented to the State, payable out of such of said lands as might be thereafter selected and specified by him at the sale price fixed from time to time by said Trustees. That said right of selections on the part of said Henderson was recognized by said Trustees as an expense of the administration of their trust, and, as such, prior in right to any other disposition to be made of said lands; and that, upon written request made by said Henderson to the Commissioner of Agriculture who was the member of said Board of Trustees having custody and control of all the records of said swamp and overflowed land and of the preparation of all transfers thereof, said Commissioner of Agriculture was authorized, and it was his custom, to issue to said Henderson (in case the lands selected and specified had not yet been patented to the State) certificates in the form and to the effect exemplified by said 'Exhibit A.'

832     SUPREME COURT OF FLORIDA.

"That the employment of said Henderson under the contract aforesaid continued until and after the year 1892, and on the 13th day of June, 1892, said Henderson was entitled, as compensation already earned under said contract, to have deeds or certificates (according as the lands selected had or had not been patented to the State) to many thousands of acres more than the total of all lands which had heretofore been so deeded or certificated, together with the number of acres (15,961 acres) included in said certificate so as aforesaid attached to the original bill as 'Exhibit A.' That being so entitled, said Henderson did on or before said 13th day of June, 1892, request the Commissioner of Agriculture to issue to him, on account of his compensation aforesaid, the certificate so attached as 'Exhibit A,' and said certificate was issued in compliance with said request pursuant to the authority delegated to him by said Trustees as aforesaid. That said Henderson was at that time entitled to select the lands described in said certificate, and did so select them, on account of his compensation under said contract, that the only reason why conveyance of the legal title to said lands was not made to said Henderson at that time was because such legal title had not been transferred by patent from the United States to the State; and that from the date of the selection of said lands by said Henderson and his notification thereof to said Commissioner of Agriculture the said Trustees held the equitable title—and, after the issuance of patent by the United States to the State, the legal title—to the same in trust for the benefit of the said John A. Henderson, his heirs and assigns.

"That in and by said certificate 'Exhibit A,' it was provided, and said Trustees through said Commissioner of Agriculture, thereby represented and promised, that a deed to the lands described therein should be executed

and delivered to said Henderson, or his order, upon the return of said certificate endorsed by him, as soon as said lands should be patented to the State of Florida by the United States.

"That on the 15th day of July, 1890, said John A. Henderson entered into a contract with J. M. Kreamer and J. J. Dunne, whereby it was agreed, after reciting the substance of the above contract between said Henderson and said trustees and the right of the former to a conveyance thereunder of some fifty to seventy-five thousand acres of land, that said Henderson should sell to said Kreamer & Dunne all the land to be received by him under said contract (after providing for certain contingencies specified) at certain price per acre therein expressed; and that the 5th and final paragraph of said contract read literally as follows, to-wit:

" '5th.  The said Henderson agrees that for all the lands that the said Kreamer & Dunne may designate he will have the State of Florida issue 'Certificates' whenever. they shall desire and the same shall be delivered to the said Kreamer & Dunne in proporton as they may make payments on this contract, or the whole may be deposited in escrow subject to the payment of the balance of the purchase money.'

"That thereafter the said Kreamer & Dunne paid to said Henderson the initial payment of six thousand dollars, as provided in said contract, and elected the option given in the paragraph thereof above quoted that land certificates should be obtained by said Henderson and delivered to said Dunne & Kreamer in proportion as they might make payments thereon; that subsequently and on or about the 11th day of August, 1892, the said Kreamer & Dunne, through the National Bank of Jack-

834       SUPREME COURT OF FLORIDA.

Byrne Real. Co. et al. v. S. F. F. Co.—Opinion of Court.

sonville, Florida, paid to said Henderson on said contract the additional sum of five thousand dollars, that said land certificate (for 15,961 acres) attached to the original bill herein as 'Exhibit A,' together with another land certificate for 9,840 acres attached to said original bill as 'Exhibit B,' was delivered to said Dunne & Kreamer by said Henderson in consideration of said two payments amounting to the sum of $11,000 under and in pursuance of the provision of said contract above quoted that certificates should be delivered to them in proportion as they might make payments thereon; that, although said certificate 'Exhibit A' is dated, and was probably issued to said Henderson, on the 13th day of June, 1892, the same was not endorsed on the back by said Henderson and delivered by him to said Kreamer and Dunne until on or about the date of the payment of said five thousand dollars as aforesaid; that by such endorsement, transfer and delivery all the right, title and interest acquired by said Henderson under said certificate in and to the lands therein described passed to and became vested in the said Kreamer & Dunne.

"That, as above alleged, from the time of the issuance and delivery of said certificate 'Exhibit A' the said Trustees of the Internal Improvement held the equitable title to the land in the same described in trust for the benefit of said John A. Henderson or his assigns until the legal title to the same was conveyed by the United States to the State of Florida, which was done by patent dated the 29th day of April, 1903; that thereafter the trustees held the legal title to said land under a like trust until the death of said Henderson, which occurred in the month of August, 1904; that soon after the death of John A. Henderson his heirs above named applied for and obtained from said trustees a deed which covered a large area of

land and included the same 15,961 acres described in
'Exhibit A' and involved in this cross-bill, which deed
was dated the 28th day of December, 1904, was filed for
record in the office of the Clerk of this Court on the 4th
day of April, 1905; that the said trust which had attached
to said land described in 'Exhibit A' from the time of its
issuance and delivery to said Henderson in 1892 to his
death in August, 1904, passed at once upon his death to
his said heirs with respect to the equitable title and
attached to the legal title when said heirs received the
same by virtue of the deed aforesaid, dated December
28th, 1904; and that said heirs received said legal title
charged with and subject to the same obligation to con-
vey said lands to the holder or holders of said certificate
'Exhibit A' as their ancestor, the said John A. Hender-
son, had held his equitable right while living and would
have held the legal title had he lived to acquire the
same." It is also alleged that the conveyance by the Hen-
derson heirs was made subject to the asserted trust.

Counsel for appellant, complainant below, in their
brief say:

"Our cross-bill is one to enforce a trust growing out of
and superseding the complete performance and consum-
mation of that part of the contract between Henderson
and Kreamer and Dunne covering the lands described in
this certificate. The contract itself is no longer in ques-
tion; it has as to these lands been terminated by per-
formance which substituted Kreamer and Dunne and
their successors in interest for Henderson as *cestuis que
trustent* of an express trust. What we are seeking is
simply to compel a compliance by the successors of the
trustees with the terms of the trust, which the trustees
themselves created and which we allege was known to

all the defendants in our cross-bill. The fact that a conveyance of the land is prayed is an incident to the execution of the trust and has no relation to the performance of the contract."

A lawful subject-matter and competent parties having appropriate authority in the premises are requisite to the creation of an express trust. In order to create an express trust, the subject, object and terms of the trust must be definitely stated by competent authority; and in order to be enforced by judicial proceedings, the trust must be evidenced as may be required by law. Where the declaration or creation of an express trust in lands is by statute required to "be manifested and proved by some writing signed by the party authorized by law to declare or create such trust," the subject, object and terms of the trust must be definitely expressed in a writing executed by an authorized party as the statute provides, or the trust cannot be proved for judicial enforcement. See 39 Cyc. p. 44, 53, 57; Lines v. Darden, 5 Fla. 51; Floyd v. Smith, 59 Fla. 485, 51 South. Rep. 537; 1 Perry on Trusts (6th ed.) Sec. 79 *et seq.*

The Act of Congress of September 28, 1850, granting to the State the swamp and overflowed lands in the State, provides for "a patent to be issued to the State therefor; and on that patent, the fee simple to said lands shall vest in the said State." The State statute, Chapter 610, approved January 6, 1855, vested in the Trustees of the Internal Improvement Fund for specific purposes the lands granted to the State by the above stated Act of Congress. The title of the State did not vest in it until the patent covering the lands was issued. Chapman & Dewey Lumber Co. v. St. Francis Levee Dist., 232 U. S. 186, 34 Sup. Ct. Rep. 297; 22 R. C. L. 335; Little v. Williams, 231 U. S. 335, 34 Sup. Ct. Rep. 68.

A demurrer does not admit allegations that are contradicted by records of which the court may take judicial notice. Middlesex Transportation Co. v. Pennsylvania R. Co., 82 N. J. Eq., 550, 89 Atl. Rep. 45; *In re* Queen's Estate, 82 N. J. Eq. 583, 89 Atl. Rep. 290; Griffin v. Augusta & Knoxville R. R., 72 Ga. 423, State *ex rel.* Wyoming Agricultural College v. Irvine, 14 Wyo. 318, 84 Pac. Rep. 90; Taylor v. Barclay, 2 Eng. Ch. *213; Brickell v. Trammell, 77 Fla. 544, 564, 82 South. Rep. 221.

The allegation of the cross-bill that in 1884 John A. Henderson "entered into a contract with the Trustees of the Internal Improvement Fund of the State of Florida, whereby he was employed by said Trustees to obtain from the United States selections and patents of swamp and overflowed lands * * * under the terms of which contract he was entitled to compensation * * * payable out of said lands as might be thereafter selected and specified by him at the sale price fixed from time to time by said Trustees," is not in accord with the public record of the Trustees of which the court may take judicial notice. See Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 727, 17 South. Rep. 902; 15 R. C. L. 1109 *et seq.;* Caha v. United States, 152 U. S. 211, 14 Sup. Ct. Rep. 513; 16 Stand. Ency. Proc. 600; Pearcy v. Stranahan, 205 U. S. 257, 27 Sup. Ct. Rep. 545; French v. Senate of California, 146 Cal. 604, 80 Pac. Rep. 1031, 69 L. R. A. 556; 16 Cyc. 905. The resolution of March 15, 1884, set out in full in the statement, shows that the Trustees "employed Col. John A. Henderson" "to make further selections of land granted to the State by an Act of Congress, September 28, 1850, and to procure the proofs required * * * for the approval of such selections," he "to receive as compensation for such service not exceeding two cents per

acre  *  *  *  and to be paid in such lands at schedule prices." See Vol. 3, p. 290, Minutes of Trustees.

The allegations that Col. Henderson was by contract employed by the Trustees "to *obtain* from the United States *selections* and *patents* of swamp and overflowed lands" and that "under the terms of which contract he was entitled to compensation  *  *  *  payable out of such lands *as might be thereafter selected and specified by him* at the sale price fixed from time to time by said Trustees," are at variance with the public record of the State officials; and in so far as the allegations conflict with such record, they are not admitted by the demurrer. See 21 C. J. 445, and authorities cited *supra*. The resolution under which Col. Henderson was employed is set out in the statement with a reference to the printed minutes of the Trustees of the Internal Improvement Fund, who are public State officals, of whose records the court may take judicial notice. Col. Henderson was employed "to make selections of land," "and to procure proofs required for the approval of such selections," his "compensation for such service" to be "paid in such lands at schedule prices." He was not employed "to obtain selections and patents" of the lands, and his compensation was not "payable out of such of said lands as might be thereafter selected and specified by him." The resolution of employment provided for "compensation not exceeding two cents per acre of the selections which may be patented" and clearly contemplated that the compensation was to be paid in lands after patents had been issued to the State. This tends to refute the allegations of conclusions  *  *  *  that the Trustees recognized the right of Col. Henderson to make selections years before patents were issued, and that the Commissioner of Agriculture

was authorized by the Trustees to issue the certificate "Exhibit A." The allegation that in and by "Exhibit A" it "was provided and said Trustees through said Commissioner of Agriculture thereby represented and promised that a deed to the lands described therein should be executed and delivered to said Hnderson or his order upon the return of said certificate endorsed by him," is a conclusion not sustained by the exhibit or by other allegations or by the law.

When the certificate "Exhibit A" was made and delivered to Kreamer and Dunne, the lands described therein had not been patented to the State and were not within the control of the Trustees of the Internal Improvement Fund. For the services of Col. Henderson in procuring proofs of proper selections of swamp and overflowed lands in the State, on which patents could issue to the State under the Act of Congress and the regulations of the United States Land Department, his compensation was, under the terms of his employment, to be made "in such lands at schedule prices." It is not shown that authority was given to Col. Henderson to select as he desired, particular lands as his compensation, so as to withdraw his selections from the control of the Trustees under their statutory trust, even if under the Act of Congress granting the lands and under the State statute defining the powers of the Trustees, such authority could have been given either before or after the State acquired the title to the lands by patents issued. It does not appear that the Commissioner of Agriculture had authority to issue the certificate "Exhibit A" as a binding obligation of the Trustees of the Internal Improvement Fund. Sections 146, 152, 154, 156 and 157 General Statutes of 1906, and Section 1, Chapter 3127, Acts of 1879, do not confer authority

upon the Commissioner of Agriculture. The allegation that it was the custom of the Commissioner of Agriculture to issue such certificates to Col. Henderson does not make the certificate efficacious to create the trust alleged. The lands, when patented to the State, were held by the five Trustees, for statutory trust purposes. The Commissioner of Agriculture is only one of the Trustees.

While the expenses of selecting the lands to be patented to the State may be a prior claim against the lands of the fund, such claim gives no right to select or sell particular lands unless the selection or sale is *duly* recognized or acquiesced in by the trustees *within their statutory powers,* or is adjudged by appropriate judicial proceedings. See Yager v. McNeill, 60 Fla. 400, 53 South. Rep. 12. Col. Henderson did not acquire the equitable title to the lands described in the certificate by virtue of the delivery of the certificate to him. Allegations of fact as to an alleged express trust in lands that can be proved only by parol in violation of the statute are no admitted by the demurrers. The certificate "Exhibit A" issued by the Commissioner of Agriculture which was endorsed on the back in blank by Col. Henderson and by him delivered to Kreamer and Dunne, is not sufficient to "manifest or prove" an express trust in the lands described in the certificate, either against the trustees or against Col. Henderson, since the certificate is not a declaration of a trust and it is not signed by a party who was authorized by law to declare or create a trust in the lands, as is expressly required by Section 2452, General Statutes of 1906. In Anderson v. Northrop, 30 Fla. 612, 12 South. Rep. 318, the trust was expressly created by a will sufficient for that purpose under the statute.

The allegations of the cross-bill that John A. Hender-

son had a right to select and specify the lands he was entitled to receive as compensation for his services to the Trustees of the Internal Improvement Fund of the State, and that such right of Henderson was recognized by the trustees, are conclusions that are not supported by any authority referred to in the cross-bill or briefs of counsel. The record showing that the trustees "employed Col. John A. Henderson" copied in the statement, does not sustain the contention. Other allegations of conclusions, that the certificate "Exhibit A" was isued to John A. Henderson by the Commissioner of Agriculture "pursuant to the authority delegated to him by the Trustees" and that the trustees by the certificate "represented and promised, that a deed to the lands described therein should be executed and delivered to said Henderson or his order, upon the return of said certificate endorsed by him, as soon as said lands should be patented to the State of Florida by the United States," and that from the date of the selection of the lands and notification thereof, the trustees held the title to the lands "in trust for the benefit of the said John A. Henderson, his heirs and assigns," are conclusions not admitted by the demurrers because not warranted by particular facts alleged, by "Exhibit A" or by the law upon the subject. See Louisville & N. R. Co. v. Palmes, *supra;* 21 C. J. 445. It does not duly appear that the trustees had power to authorize the issuance of the certificate or that they in fact authorized it. The certificate did not in legal effect except or reserve the described lands for the benefit of Col. Henderson or those claiming under him. It is not made to appear that the authority of the trustees over the lands was in any way affected by the alleged selection of the lands by Col. Henderson and his application for the certificate, or by the issuance of the certificate by the Commissioner of

Agriculture. Nor did the endorsement and delivery of
the certificate by Col. Henderson to Kreamer and Dunne
declare or create an express trust in the described lands.
Not being authorized by law or executed in compliance
with the statute so as to declare or.create, or to manifest
or prove an express trust in the particular lands, the
unauthorized certificate was under the terms of the sta-
tute "utterly void and of none effect," to manifest or
prove an express trust. Allegations of the cross-bill not
sustained by the legal effect of the certificate are not
admitted by the demurrers. See Louisville & N. R. Co.
v. Palmes, *supra.*

Even if the Trustees of the Internal Improvement Fund
had authority before patents issued to reserve the lands
in trust, and attempted to do so by authorizing the issu-
ance of the certificate "Exhibit A," and such certificate
could be regarded as legal evidence of a declaration or a
creation of a trust by the trustees in favor of Col. Hen-
derson and his assigns, without violating Section 2452,
General Statutes of 1906, yet the assignment of the trust
by Col. Henderson was not made by deed duly executed
and attested, as required by Section 2453, General Sta-
tutes of 1906, which applies to any interest in a trust in
lands; therefore, the alleged assignment by endorsement
in blank and delivery of the certificate by Col. Henderson
is "void and of none effect" as evidence of an assignment
of an interest in a trust in lands, under the terms of the
statute, Section 2453, General Statutes of 1906. The
statutes referred to when applicable, as here, are con-
trolling, whatever may be the rule elsewhere. An express
trust in the lands described in "Exhibit A" is not shown
by the cross-bill.

The allegations of the cross-bill, as to the contract
between John A. Henderson and Kreamer and Dunne

and the endorsement and delivery of the certificate "Exhibit A" by Henderson to Kreamer and Dunne and the payments alleged, did not create an implied trust between the parties covering the lands, for the reason that the allegations are uncertain and indefinite as to matters on which the right to relief is dependent. Jackson v. Relf, 26 Fla. 465, 8 South. Rep. 184.

Even if the endorsement in blank and delivery of the certificate "Exhibit A" by Henderson to Kreamer and Dunne can be regarded as by reference legally supplying a description of lands agreed to be sold under the prior contract, it does not with certainty and definiteness appear that the payments received by Henderson were the full purchase price of the lands covered by the certificates. The allegations are of an "initial payment" "as provided in the contract," and as to an "additional sum" paid "on said contract," in connection with another land certificate not involved in this suit. There is an allegation that the payments were made "under and in pursuance of the provisions of said contract above quoted that certificates should be delivered   *   *   *   in proportion as payments are made thereon;" but the acreage price is not shown, nor are other terms of the contract given, though it does appear that "certain contingencies" were an element of the contract.

The allegations of the cross-bill show that the cross-complainant had knowledge of the terms and conditions of the executory contract between Col. Henderson and Messrs. Kreamer and Dunne, and consequently had knowledge of the price per acre to be paid for the lands covered by the contract; but the cross-complainant significantly refrains from alleging the price per acre, which if shown would enable the court to determine whether the "initial"

and "additional" payments alleged to have been made on the lands covered by the certificate "Exhibit A" were in fact full payment for the lands so as to create a trust as to them against Col. Henderson and his heirs.

If the alegations, including those of the payments made, do not clearly show an executed contract as to the lands covered by the certificate "Exhibit A," then there is no trust in such lands. And if the allegations as to the payments made, taken with other allegations, and with the disclosure made by the cross-bill of the existence of other facts known to the complainant but not adduced; do not clearly show full payment or a completed sale which is essential to the trust asserted, the allegations are not well pleaded and consequently the conclusion asserted as to a trust in the land is not admitted by the demurrer.

Even if the "contingencies" shown to be a part of the contract, but not set forth in the cross-bill, are not material to the asserted equity under the contract, it should have been so alleged, when it is alleged that "certain contingencies" were a part of the executory contract. *Non constat* the undisclosed "contingencies" alleged to be a part of the contract destroy the asserted equity.

The asserted legal sufficiency of the allegations to establish a trust is not admited by the demurrer, when the facts definitely alleged do not clearly show facts upon which a trust was created by the law.

Possible inferences favorable to the cross-complainant that otherwise may be drawn from the allegations made, will not be indulged when it is manifest that information affecting the equities asserted is withheld, since it must be assumed that the pleader would have made a full disclosure of the alleged price per acre, etc., if it would have

benefitted his claim, and a breach of trust will not be inferred from ambiguous allegations. It was incumbent upon the cross-complainant by distinct and certain allegations of ultimate facts to show the creation of the trust asserted, and also its breach while it existed, in order to warrant the relief sought.

If the facts relied on to establish the trust are not sufficiently pleaded, they are not admitted by the demurrer. And if full information as to facts is shown to be withheld, and such facts are material to the asserted trust, deductions from other allegations that only partially disclose the facts are not admitted by the demurrer.

The cross-bill shows an executory contract for the sale of all the lands Col. Henderson was to receive for his services to the Trustees of the Internal Improvement Fund, and apparently the contract did not contemplate an executed sale of any portion of the lands less than the whole.

The provision that certificates may be issued to Kreamer and Dunne for lands "in proportion as they may make payments on this contract" does not indicate a purpose to make a complete sale of any of the lands except as an entirety. The alternative provision of the contract, to-wit, "or the whole may be deposited in escrow subject to the payment of the balance of the purchase money," also contemplates one sale of all the lands. One provision is that certificates may be issued in proportion as payments are made on a continuing executory contract; the other is that all the lands may be placed in escrow. An executory agreement to sell all the lands that Col. Henderson was to receive from the Trustees was apparently the only purpose of the contract. And the cross-bill shows no other contract or any purpose to make a completed sale of any part of the lands.

The allegations of the cross-bill show a once existing executory contract between Col. Henderson and Kreamer and Dunne, and do not clearly and definitely show an executed contract covering the lands in controversy which were a part of the subject-matter of the preceding executory contract. The endorsement and delivery of the certificate "Exhibit A" manifestly relate to the previous executory contract, and there is nothing to show a separate executed sale of the lands described in "Exhibit A."

If the payments made were in full for the particular lands, and not part payments under the contract or on the purchase price of the lands covered by the certificate, it could easily have been alleged. For aught that definitely appears, the amounts received by Col. Henderson were partial payments on the executory contract under its terms, and the equities asserted do not exist because the terms of the contract were not complied with by reason of an abandonment, an amendment, or an agreement or otherwise. The fact that no application is shown to have been made for deeds when the lands were "patented to the State" in 1903, pursuant to the express terms of the certificate which being without legal force or effect was merely endorsed in blank and delivered by Henderson to Kreamer and Dunne, indicates that no rights were then claimed under the certificate. Col. Henderson was then living. The certificate may have been left outstanding as being of no legal efficacy.

The allegations do not with certainty and definiteness show a complete sale by John A. Henderson for a consideration fully paid, of his interest in the particular lands here involved.

In State ex rel. Dixon v. Trustees of the Internal Improvement Fund, 20 Fla. 402, the relator had made pay-

ment at the office of the Trustees for the land covered by the certificate issued to him by "The Commissioner and Salesman" who received the payment for the Trustees of the Internal Improvement Fund. This created the possible equity referred to in the opinion in that case.

In Yager v. McNeill, 60 Fla. 400, 53 South. Rep. 12, the Trustees of the Internal Improvement Fund ratified the "certificates or contracts" referred to, if they were not made by due authority of the Trustees.

The cross-bill alleged that Henderson had a contract with Kreamer and Dunne to sell them all the lands he was to receive as compensation for his services to the State, showing it to be an executory contract, but the entire contract is not exhibited nor is the price per acre disclosed; and there is no allegation that the lands covered by the certificate were paid for in full. From the indefinite allegations of the cross-bill as to an "initial payment," and as to an "additional" payment "under and in pursuance of the power of said contract" there can be no certain inference that the payments made to Col. Henderson by Kreamer and Dunne were in full for the lands covered by the certificate "Exhibit A" and by the other certificate referred to as "Exhibit B," it being alleged that "Exhibit A," together with another land certificate for 9,840 acres attached to said original bill as 'Exhibit B,' was delivered to said Kreamer and Dunne by said Henderson in consideration of said two payments amounting to the sum of $11,000.00 under and in pursuance of the provisions of the contract" that certificates should be delivered in proportion as payments might be made. By withholding the full terms of the executory contract and the price per acre to be paid, the cross-complainant has in the other ambiguous allegations failed

to make certain and definite allegations entitling it to the relief prayed, particularly where it is alleged that the contract provides "for certain contingencies specified," none of which are disclosed by the cross-bill. Apparently the contract provides partial payments and for the delivery of land certificates upon part payments, the transactions to be adjusted and to become an executed sale only upon complete performance of the contract as an entirety, with conditions that may have destroyed rights, if any were acquired, under the certificates. A partial executed sale was apparently not contemplated by the contract, and a purpose to make a partial executed sale does not appear. As the claim is predicated upon an uncompleted executory contract, and as it is not alleged and does not definitely appear that the full purchase price of the lands covered by "Exhibit A" was paid so as to make a completed sale of some of the lands covered by the executory contract, no equitable title to the particular lands passed to the holders of the certificate, and the question of laches in completing the payments under the contract became pertinent. A trust *pro tanto* was not created if the terms of the executory contract were not complied with. And no such compliance is shown.

Treating the subsequent conveyance by the Trustees of the lands in controversy to the heirs of Col. Henderson as an authorized ratification of his selections of the lands described in the certificate, "Exhibit A," yet the certificate is insufficient to evidence an express trust in the particular lands, and the allegations as to the contract between Henderson and Kreamer and Dunne and as to the endorsement in blank and delivery of the certificate, "Exhibit A," describing the lands, and as to the payments made to Henderson by Kreamer and Dunne, do not clearly and distinctly show an implied trust arising from a

completed sale for full consideration by Col. Henderson
of his entire interest then present or prospective in the
particular lands to Kreamer and Dunne. Nor does it
appear that the contract was complied with so as to
create a trust *pro tanto.* Therefore, the allegation of the
cross-bill "that such endorsement, transfer and delivery
(of "Exhibit A") all the right, title and interest acquired
by said Henderson under said certificate in and to the
lands therein described passed to and became vested in
the said Kreamer and Dunne," is a mere conclusion not
sustained by the legal effect of the facts alleged. If the
transactions with Col. Henderson as alleged are suffi-
cient to show an executory contract that afforded to
Kreamer and Dunne a potential equity in the described
lands, the allegations also show a loss of that equity by
laches. The claim is a trust in all the lands described
in "Exhibit A," while the allegations show no such trust
in all the described land or in a stated part thereof.

From the allegations of the bill and the exhibit made
a part of the bill, it clearly appears that if an equitable
interest in the particular lands did accrue to Kreamer
and Dunne by the blank endorsement and delivery of the
certificate "Exhibit A" to them by John A. Henderson
and the receipt of Col. Henderson of money as payment
thereon, pursuant to the contract between them, that
equity has been lost or extinguished by subsequent events
of which they had legal notice and the lapse of time dur-
ing which they were required by law and the circum-
stances to take appropriate steps to protect their alleged
inchoate claim.

The certificate was delivered in 1892; it does not defi-
nitely appear that the money received thereon was more
than a partial payment; the endorsement and delivery of

the certificate gave no legal or equitable title to the lands;
the patent conveyed the lands to the State in April 1903,
and its record in Washington, D. C., was notice of the is-
suance of the patent.    Wilcox v. Phillips, 260 Mo. 664,
169 S. W. Rep. 55.    Col. Henderson died in August, 1904;
the conveyance of the lands to the heirs of Col. Hender-
son was notice after its issuance and record at Tallahas-
see in December, 1904.    Sec. 157, Gen. Stats., 1906; Pat-
terson v. Langston, 69 Miss. 400, 11 South. Rep. 932;
Evitts v. Roth, 61 Tex. 81.    It was recorded in the coun-
ties in 1905.    The conveyance by the Henderson heirs was
recorded in 1915; the proceedings to acquire the certifi-
cate from the original holders were in 1916, and this
cross-bill was brought in July, 1917.    If the certificate
"Exhibit A," though insufficient to show an express trust
and is not binding on the Trustees, is a sufficient descrip-
tion of lands alleged to have been sold by Col. Hender-
son to Kreamer and Dunne under the contract, then all
the terms of the certificate are to be considered along
with the descriptions of land contained therein.    It does
not appear that the full purchase price was paid for the
lands embraced in the certificate "Exhibit A."

The certificate itself under which the cross-complain-
ant claims, in asserting an equity in the lands, stated that
the land would be conveyed to John A. Henderson, or to
his order *"as soon as the same had been patented to the
State of Florida."*    If Kreamer and Dunne were entitled
to the lands by reason of this certificate and of the "ini-
tial" and "additional" payments made thereon under
their contract with Henderson, it was their duty to ac-
quire proper muniments of title as contemplated by the
express terms of the certificate and to pay the balance of
the purchase price, if any was unpaid.    If the certificate
was efficacious, it could have been used in getting con-

veyances of the land in April, 1903, when the patent was issued, or within a reasonable time after the issuance of the patent. This was not done, possibly because the certificate did not then give the right to do so. Col. Henderson died in August, 1904, and the lands were by the State conveyed to his heirs in December, 1904. They recorded this deed of conveyance in 1905, in the proper counties and afterwards conveyed the land, and their deed was recorded in December, 1915. This cross-bill was brought July 10, 1917. Thus more than fourteen years after deeds could have been obtained, if entitled to them, and nearly thirteen years after the death of Col. Henderson, who was cognizant of the circumstances of the transaction, and after the death of Mr. Kreamer, this claim is presented by a third party; and the showing clearly is, that if an equity in the lands ever existed in favor of Kreamer and Dunne, it has been abandoned, or lost by their neglect, while other parties have acquired rights in the lands through one whose lips are sealed by death. The holder of the certificate for years knew the lands had been patented to the State and conveyed to the Henderson heirs and that taxes were to be paid by the real owner. There was no record of a trust claim in the lands. The cross-bill shows the lands greatly enhanced in value after patents were issued to the State.

Under the resolution or contract of employment Col. Henderson could have obtained lands as his compensation as soon as the patents were issued to the State. Many thousands of acres were due him "at schedule prices," and as he did not obtain deeds for any of it after it was patented to the State in April, 1903, when he lived till August, 1904, it can not fairly be said he recognized the right of the holders of the certificate "Exhibit A" by not demanding title to the lands covered by the certificate.

If there was an equity in the lands as asserted, it has been lost by laches.

Affirmed.

TAYLOR, J., AND GIBBS, Circuit Judge, concur.

BROWNE C. J., AND LOVE, Circuit Judge, dissent.

ELLIS AND WEST, J. J., disqualified.

LOVE, Circuit Judge, dissenting:

After a most careful consideration and study of the questions arising in this case, and with the greatest deference to the views of the majority of my learned associates, I find, most reluctantly, that I am compelled to dissent from some of the views expressed in the prevailing opinion.

This case is brought to this court by an appeal from the judgment of the lower court sustaining demurrers to the cross-bill, two of the grounds of both demurrers raising the question of want of equity in the bill and laches.

The effect of the demurrers is to admit the truth of all the facts that are sufficiently alleged by the cross-bill as well as the conclusion necessarily resulting from the facts stated and to assert that in the particulars stated in the demurrers, the cross-bill is insufficient to show a cause of action. While all facts necessary to be proven should be alleged, it is sufficient if the ultimate facts are stated without detail. H. W. Metcalf Co. v. Orange County, 56 Fla. 829, 47 South. Rep. 363.

A general demurrer for want of equity should be over-

ruled if there is any ground for equitable relief stated in the bill. Thompson v. Maxwell, 16 Fla. 773; Louisville & N. R. Co. v. Gibson, 43 Fla. 315, 31 South. Rep. 230.

From the statement of this case, it appears that the allegations of the cross-bill show that, by contract entered into between John A. Henderson and the Trustees of the Internal Improvement Fund, in 1884, the said Henderson was employed to obtain selections and patents from the United States Government for certain swamp and overflowed lands to which the State was then entitled, but which it had failed, up to that time, to receive; and for his services under the terms of said contract, the said Henderson was to receive as his compensation at the rate of two cents for every acre of swamp and overflowed lands so selected, as a result of his labors and to be patented to the State, "payable out of such lands as might be thereafter selected and specified by him, at the sale price fixed from time to time by said Trustees." That on June the 13th, 1892, during the term of the said Henderson's employment under the contract mentioned, he was entitled as compensation already earned by him under said contract to have deeds or certificates (according as the lands selected by him had or had not been patented to the State) to many thousands of acres more than the total of all lands theretofore deeded or certified to him, together with the number of acres included in the certificate referred to as "Exhibit A"; that the said Henderson, being so entitled, requested the Commissioner of Agriculture to issue to him such certificate, and in accordance with the custom of said Commissioner under such circumstances and, as it is expressly alleged, pursuant to the authority delegated to him by the said Trustees, and in compliance with such request, such certificate was duly issued.

That on July the 15th, 1890, the said John A. Henderson entered into a contract with J. M. Kreamer and J. J. Dunne whereby, after reciting the substance of said contract between the said Henderson and the said Trustees and the right of the former to a conveyance thereunder of some fifty to seventy-five thousand acres of land, it was agreed that the said Henderson should sell to the said Kreamer and Dunne all the land to be received by him under said contract (after providing for certain contingencies specified) at a certain price per acre in said contract stated; and the final paragraph of said contract being as follows: "Fifth, the said Henderson agrees that for all the lands the said Kreamer and Dunne may designate, he will have the State of Florida issue certificates whenever they shall desire, and the same shall be delivered to the said Kreamer and Dunne in proportion as they may make payments on this contract, or the whole may be deposited in escrow subject to the payment of the balance of the purchase money."

That thereafter Kreamer and Dunne paid to the said Henderson the initial payment of Six Thousand Dollars as provided in said contract and under the option given in the quoted paragraph, elected that the land certificates should be obtained by the said Henderson and delivered to the said Kreamer and Dunne in proportion as they might make payments thereon. That subsequently, about August 11, 1892, Kreamer and Dunne paid to the said Henderson on the said contract the additional sum of Five Thousand Dollars and that said land certificates designated as "Exhibit A," with another for Nine Thousand Eight Hundred and Forty acres were delivered to the said Kreamer and Dunne by the said Henderson in consideration of said two payments, amounting to the sum of Eleven Thousand Dollars, under and in pursuance

of the provisions of said contract above quoted, providing that such certificates should be delivered to them in proportion as they might make payments thereon.

These allegations set out a valid agreement, by which the said Henderson agreed to sell to Kreamer and Dunne "all the land to be received by him" under the contract between him and the said Trustees at a certain price per acre alleged to be stated in the contract, but which is not specifically set out in the cross-bill. In said contract, the said Henderson agreed that for all the lands the said Kreamer and Dunne might designate he would have the State of Florida issue certificates, "whenever they shall desire and the same shall be delivered to the said Kreamer and Dunne in proportion as they may make payments on this contract, or the whole may be deposited in escrow subject to the payment of the balance of the purchase money." Under the alleged contract between Henderson and the said Trustees, the former would be paid out of the lands selected as the result of his labors and patented to the State, such part as "might be thereafter selected and specified by him at the sale price fixed from time to time by the said Trustees." Such allegations sufficiently stated the effect of the alleged contract with respect to the privilege conferred thereby on the said Henderson of choosing and designating certain parts of the selected lands for his compensation.

Whether or not the creation of such special privilege on the part of said Henderson by the then Trustees, by means of a contract providing for his compensation for the services to be rendered by him as aforesaid thereunder, before the lands were actually patented to the State, would bind the State or future trustees in the event of an attempt to deny such right; or whether, as is contended in the prevailing opinion in this case, the resolu-

tion of the trustees in employing Col. Henderson, as set forth in the Minutes, is so at variance with the alleged provisions of the said contract as to prevent such allegations from being admitted by the demurrer, does not, in my opinion, materially affect the right of the parties under the allegations of the cross-bill, as it appears that such right was subsequently recognized by the then trustees when they conveyed such selected and designated lands to the heirs of the said John A. Henderson pursuant to such contract. See, however, Emmet County v. Allen, 76 Iowa 499, 41 N. W. Rep. 201, as upholding the validity of such a contract.

Even if it be admitted that, as between the said Henderson or his assigns on the one side and the State or the Trustees on the other, the Certificate alleged, was without binding effect, had it been questioned, yet it plainly appears from the allegations of the cross-bill that the selections of such lands as are described in the said certificate were recognized and ratified by the Trustees after said lands had been patented to the State in 1903, when, as it is alleged, "soon after the death of the said Henderson," his heirs, above named, applied for and obtained from the said Trustees a deed which covered a large area of land and included the same fifteen thousand nine hundred and sixty-one acres described in "Exhibit A" and involved in this cross-bill.

If the said Henderson had the right under his contract with the said Trustees to select lands that were to be conveyed to him by such Trustees and did select the lands described in said Certificate, as it is alleged he did, then such Trustees, or the Commissioner of Agriculture, who himself was one of such Trustees, and, as it is alleged, had the authority delegated to him by such Trustees so to do, would not be acting beyond the scope of their re-

spective authorities or powers in certifying that such a selection had been made, as this would be only certifying to a fact known to the Trustees in their official capacity.

Taking into consideration the recitals of the contract between Henderson of the one part and Kreamer and Dunne of the other part, the situation of the parties and their alleged action with reference to such contract, it is apparent that the so-called land certificate issued to Henderson by the Commissioner of Agriculture was such certificate as was referred to in the quoted clause of the said contract and as was in the contemplation of the parties thereto, and was obtained from the Commissioner of Agriculture by the said Henderson and delivered by him to the said Kreamer and Dunne pursuant to the provisions of said contract in order to carry out in good faith his obligations thereunder, consequent upon the payment to him by the said Kreamer and Dunne of the said sum of Eleven Thousand Dollars and their election to exercise their option under the said contract as aforesaid. It is alleged in the said cross-bill, and therefore admitted by the demurrers, that the said Henderson received from Kreamer and Dunne the sum of Eleven Thousand Dollars; that *in consideration thereof* and in pursuance of the quoted provisions of said contract, he delivered to Kreamer and Dunne two certificates, which certificates, under the terms of said contract, he was to deliver to the said Kreamer and Dunne "in proportion as they may make payments on this contract;" that is, such certificates should be delivered to the said Kreamer and Dunne in the degree or measure as they made payments on the contract. Such allegations plainly import that as Kreamer and Dunne designated certain lands and paid over to the said Henderson the purchase price, he would

obtained the mentioned certificates and deliver the same to Kreamer and Dunne, the number of acres included therein being in proportion or in the degree or measure as the amount paid therefor bore to the stipulated price for the lands agreed to be sold. It would follow, therefore, that before Henderson could be called upon to deliver such certificates, he should first receive the full purchase price at the agreed rate for the number of acres included in such certificates. Further, it is alleged in the cross-bill that the said land certificate, designated as "Exhibit A," with another for nine thousand eight hundred and forty acres, were delivered to the said Kreamer & Dunne by the said Henderson *in consideration of* the two payments amounting to the sum of eleven thousand dollars, under and in pursuance of the said contract above quoted. The majority of this court hold that the allegations of the payment of such consideration are too uncertain and indefinite to clearly show *full* payment for the particular land described in the said certificates, contending, that to show an executed consideration for such land, the cross-bill should have clearly alleged that such payments were *in full* for the particular lands and not partial payments and that full disclosure should have been made by the pleader of the alleged price per acre, etc. In this I am unable to concur. The meaning of the words "in consideration of" as ordinarily and commonly attributed to them, when appearing in deeds, agreements for the sale of property and other like instruments is, *prima facie,* the *full* consideration, the entire purchase price, and the burden of proof, when the recited consideration in such instruments is attacked is upon the person attacking it. Therefore, in the absence of anything to the contrary appearing, it is only a fair and reasonable inference to draw from such allegation that the payment of the said sum of

$11,000.00 was the full and entire consideration for the particular lands alleged, and that the details as to price per acre, etc., are evidentiary matters only.

Construing the action of Col. Henderson in delivering to Kreamer & Dunne such certificates, as it is alleged he did, pursuant to the provisions of said contract and "in consideration of" the payment to him of the said sum of elevent thousand dollars, I submit, the fair and reasonable deduction to be drawn from all of the allegations of the cross-bill, relative to the alleged transaction, is that the particular lands described in the said certificates were paid for in full at the agreed purchase price before the alleged delivery of said certificates.

As between Henderson of the one part and Kreamer and Dunne of the other, what was the effect of such certificate, if it was not binding upon the Trustees to the extent of creating an express trust in such lands for the benefit of the said Henderson? Was it a mere scrap of paper? The certificate in question, signed by the Commissioner of Agriculture, ex officio a member of the Board of Trustees of the Internal Improvement Fund, and in whose custody were all of the maps, plats and records of the public lands of the State of Florida, declares that "John A. Henderson has applied to enter on his account as State Selecting Agent all the following described lands," a particular description being set out therein, and "I further certify that the said land will be conveyed to the said John A. Henderson or his order as soon as the same has been patented to the State of Florida." This certificate, as it is alleged, was then endorsed and delivered to Kreamer and Dunne by the said Henderson, and thus, he thereby affirmed and ratified the recitals therein contained. If such certificate was of no binding

force and effect upon the said Trustees, at least it is referable to the contract for the sale of such lands by Henderson to the said Kreamer and Dunne, and identifies with certainty the lands for which payment was made by Kreamer and Dunne under and in pursuance of such contract. These particular lands being paid for in full, as hereinbefore pointed out, then, as soon as the legal title became vested in the heirs of the said Henderson, they are regarded in equity as being seized thereof as naked trustees, having no interest therein, but charged with the simple duty to convey the same to the said Kreamer and Dunne or their assigns upon demand. 27 R. C. L. 467; Aycock Bros. Lumber Co. v. First National Bank of Dothan, 54 Fla. 604, 45 South. Rep. 501. This view is strengthened by the authoritative case of Rose v. Watson, 10 H. L. Cases, *672, 33 L. J. Ch. 385, 10 L. T. 106, wherein it was said by Lord Cranworth: "There can be no doubt, I apprehend, that when a purchaser has paid his purchase money, though he has got no conveyance, the vendor becomes a trustee for him of the legal estate, and he is, in equity, considered as the owner of the estate. When. instead of paying the whole of the purchase money he pays part of it, it would seem to follow as a necessary corollary that to the extent to which he has paid his purchase money, to that extent the vendor is trustee for him; in other words, that he acquires a lien exactly in the same way as if upon payment of part of the purchase money, the vendor had executed a mortgage to him of the estate to that extent." This same principle is also recognized and stated in Jennisons v. Leonard, 21 Wall. (U. S.) 302, 22 L. Ed. 539.

It is contended that if Kreamer and Dunne ever acquired any equitable rights in the premises the allegations of the cross-bill show that they lost the same by

abandonment. If there is no evidence of abandonment of the vendees' claim, no mere lapse of time will bar their remedy, when the consideration has been fully performed, as the vendor then becomes a trustee and can gain no adverse rights without an open disavowal. 36 Cyc. 732.

Acts constituting abandonment must be positive, unequivocal and inconsistent with the continuance of the contract. 39 Cyc. 1353. Aside from mere inaction of the vendees of Henderson in failing to apply for their deed, for the time stated, no evidence of abandonment of their accrued rights is made to appear.

But it is urged that the cross-bill shows that the vendees of Henderson and their assigns have been guilty of such gross laches in asserting their rights as to deprive them of any remedy at this late day. The facts and circumstances relied upon to establish such alleged laches are, briefly stated, the delay of the cross-complainant and those under whom he claims in failing to take any action towards enforcing their claims from their accrual in 1904, when the legal title to the lands in question was conveyed to the heirs of the said Henderson (for it must be borne in mind that the prevailing opinion in this case holds that no rights could accrue to the purchasers until the trustees had conveyed to Henderson or his heirs) up to the filing of the cross-bill; the conveyance by such heirs in 1915 to the South Florida Farms Company; though, it is alleged, with notice to the latter of the rights of those under whom complainant in the cross-bill claims; the great increase in the value of such lands during such interval; the death of the said Jno. A. Henderson, who was cognizant of the circumstances of the transaction and the consequent loss of his evidence and the presumed payment of the taxes on such lands by the holders of the

legal title.    Do these facts and circumstances constitute such laches as deprive the vendees of the said Henderson and those claiming under them of all rights once vested in them?

Laches is a neglect to do something that by law a man is obliged or in duty bound to do.   Anderson v. Northrop, 30 Fla. 612, 12 South. Rep. 318, 324.

According to Mr. Pomeroy, the doctrine of laches cannot be more concisely or accurately stated than in the language of Stinness, J., in Chase v. Chase, 20 R. I. 202, 37 Atl. Rep. 804: "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another.   So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right.   The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes; but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." 1 Pomeroy's Equitable Remedies, Section 21.

What disadvantage has the alleged delay in asserting the claims set up by cross-complainant worked to the heirs of Col. Henderson, who are made defendants in the cross-bill?   The State obtained a patent to the land in question in 1903.   From the allegations of the cross-bill no application is shown to have been made by Jno. A. Henderson up to the time of his death in 1904 for the conveyance to him of the lands to which he was entitled in

compensation for the services rendered by him in select-
ing and obtaining patents to the State for such lands.
It was not until after his death that any application for
such conveyance was made, and upon that application a
deed for the land in question, with other lands, was made
by the trustees to the heirs of the said Henderson. Under
the view that the "certificate" conferred no right as
against the said trustees, then Kreamer and Dunne could
take no step towards acquiring a legal title to the land in
question until such title had been acquired by the said
Henderson or his heirs.   There was, therefore, no loss
of evidence as to the circumstances of the transaction,
resulting from the death of Col. Henderson, and caused
by the failure of his vendees to promptly assert their
rights in the premises, as is contended for in the con-
trolling opinion, as it clearly appears that he died prior
to the acquisition of the legal title to the lands by his
heirs.

If the land has greatly enhanced in value, the purchase
price was paid before such increase, and the benefit
thereof should inure to the vendees of the said Hender-
son.   If the South Florida Farms Company purchased
such lands with notice of the rights of the Henderson
vendees, then it took the same charged with the trust in
connection therewith; if it took such lands without such
notice, then the relief prayed for, as against the Hender-
son heirs, if the allegations of the cross-bill can be sus-
tained, can be afforded, with due provision for their reim-
bursement for such expenses as they have incurred, if any,
because of the delay in the enforcement of the trust.

The relation between the said John A. Henderson on
the one side, and Kreamer and Dunne on the other, was,
at the inception of the contract, apparently and presum-

ably a friendly one, a real confidence being reposed in the vendor by the purchasers when the purchase price of the land was paid, and in the absence of any showing to the contrary, may be regarded as unbroken and continuing after his heirs obtained the legal title up to the time of the conveyance by them of the land to the South Florida Farms Company. Up to that time, Col. Henderson and his heirs on the one side and the vendees of Col. Henderson and their assigns on the other, were in the same position with reference to each other as they were when such heirs acquired the legal title to the said land, and no injury or disadvantage to such heirs is shown to have resulted from the failure of the vendees of Col. Henderson and their assigns to attempt to enforce their equitable rights at an earlier day than it is shown by the cross-bill they did.

I am forced to the conclusion, therefore, that the judgment on the demurrer should be reversed and the cause remanded.

BROWNE, C. J., concurs in the dissenting opinion.